The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Karen S. RODRIGUEZ, Defendant–Appellant.

No. 05CA2591.

Colorado Court of Appeals, Div. VI.

Dec. 11, 2008.

Rehearing Denied Jan. 15, 2009.

Certiorari Granted June 22, 2009.

§ 24–51–1105, C.R.S.2008.

1154

John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Samler & Whitson, P.C., Eric A. Samler, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Karen S. Rodriguez, appeals the judgments of conviction entered on jury verdicts finding her guilty, under a complicity theory, of numerous counts of attempted and completed aggravated incest, sexual assault on a child, and sexual assault on a child by one in a position of trust. We affirm.

Defendant's husband physically, emotionally, and sexually abused defendant, their youngest daughter, M.R., and defendant's son from a prior relationship, M.H. The husband abused the son over a ten- to twelve-year period and abused the daughter throughout the year before his arrest.

Defendant facilitated the husband's offenses by bringing the children to him to be sexually abused. At trial, she asserted that she acted under duress as a result of the husband's extreme emotional, physical, and sexual abuse perpetrated against her.

The prosecution's theory was that, although defendant had herself been severely abused by her husband, the abuse had not been severe enough that she could not have protected the children from her husband.

The jury found defendant guilty of the twenty-four counts charged against her. After merging several of those convictions, the trial court sentenced defendant to an aggregate term of 118 years to life imprisonment.

## I. Use of Closed–Circuit Television Procedure

Defendant contends that the trial court violated her rights to be present at trial and to confront adverse witnesses as a result of the procedure it used to obtain the testimony of M.R. We conclude that reversal is not warranted.

Here, the prosecution moved, under the statutory provision currently codified at section 16–10–402, C.R.S.2008, to use a closed-circuit television procedure to allow ten-year-old M.R. to testify outside defendant's physical presence. Based on the testimony of a social worker, the trial court granted the prosecution's motion. Under the procedure adopted by the trial court, (1) M.R. testified in open court; (2) defendant watched M.R. testify via closed-circuit television from the judge's chambers; and (3) (as the court informed the jury) the trial could, on occasion, be suspended so counsel, who remained in the courtroom, could consult with defendant about M.R.'s testimony. The record reflects a recess was taken before defense counsel cross-examined M.R. to allow defendant and defense counsel to confer.

In the trial court, defense counsel expressed concern that (1) separating the witness from defendant in this manner would cause a prejudicial effect in the minds of the jury that would be difficult to overcome; (2) he would not be able to "get input from his client"; and (3) his being separated from defendant raised "constitutional problems" about his ability to simultaneously counsel her and assist in her defense. Defense counsel was noncommittal about whether, if a closed-circuit television procedure were utilized, the witness or defendant should remain in the courtroom.

The trial court considered defense counsel's comments as constituting an objection

to the use of closed-circuit television to obtain M.R.'s testimony. However, in our view, it is highly questionable whether those comments were sufficient to properly preserve for appellate review the claims defendant now makes on appeal.

■■■ The purpose of an objection is not only to express disagreement with a proposed course of action, but also to identify the grounds for disagreement. An objection must be specific enough to provide the trial court with a meaningful opportunity to prevent or correct error. *See Vigil v. People,* 134 Colo. 126, 129, 300 P.2d 545, 547 (1956); *Borquez v. Robert C. Ozer, P.C.,* 923 P.2d 166, 171 (Colo.App.1995), *aff'd in part and rev'd in part,* 940 P.2d 371 (Colo.1997).

Here, it is not altogether evident that defense counsel's comments would have alerted the trial court or the prosecutor to the contentions she raises on appeal, that is, that the procedure used by the court violated her rights under the federal constitution or state statute to be present in court to confront M.R. face-to-face. Nonetheless, for purposes of resolving this issue, we will assume that those contentions have been properly preserved for review.

■■ We do not, however, engage in the same assumption regarding those of defendant's arguments that are based on independent, state constitutional grounds. Where, as here, a defendant does not make a specific objection, with a separate argument, under the state constitution, we must presume the defendant's objections are based on federal, not state, constitutional grounds, and limit our review accordingly. *Cf. People v. Gann,* 724 P.2d 1318, 1320–21 (Colo.1986) (where defendant's motion to dismiss referred generally to "due process" and the district court failed to make any specific reference to the Colorado Constitution in its order of dismissal, appellate court must presume that both the motion and the lower court's ruling were based exclusively on federal constitutional standards).

■■ A defendant has a federal constitutional right to confront adverse witnesses at trial. *See* U.S. Const. amend. VI. A defendant also has a closely related, but not identical, federal constitutional right to be present at critical stages of his or her trial. *See United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (the "right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but ... this right is [also] protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him" or her (citation omitted)).

■■ Contrary to defendant's assertion, the federal constitution does not require that a defendant be allowed in all instances to confront an adverse witness face-to-face in court. In *Maryland v. Craig,* 497 U.S. 836, 855–56, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666 (1990), a closely divided Supreme Court upheld a defendant's sexual assault convictions despite the victims' having testified outside the defendant's presence via one-way, closed-circuit television. The Supreme Court reasoned that the "preference" for face-to-face confrontation "must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 848, 110 S.Ct. at 3165 (quoting *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895)).

■■ In *Craig,* the Court recognized that a state's interest in protecting the physical and psychological well-being of child abuse victims could, in some cases, be sufficiently important to outweigh a defendant's right to be face-to-face with his or her accusers in court. *Id.* at 853–56, 110 S.Ct. at 3168–69. Such a case is presented when the trial court finds that (1) a special procedure is necessary to protect the welfare of the particular child witness; (2) the particular child witness would be traumatized by the presence of the defendant—not by the proceedings generally; and (3) the child witness will suffer more than de minimis emotional distress if forced to testify in the presence of the defendant. *Id.*

In Colorado, the General Assembly has enacted a statute, section 16–10–402 (formerly found at section 18–3–413.5, C.R.S.), representing its judgment as to how best, and under what circumstances, to accommodate

the public's interest in protecting testifying young child sex assault victims consistent with a defendant's right to confront adverse witnesses. *See People v. Mosley,* 167 P.3d 157, 161 (Colo.App.2007). Consistent with *Craig,* section 16–10–402 authorizes the use of closed-circuit television to obtain the live testimony of a sex assault victim who "at the time of trial [was] ... less than twelve years of age" when "the testimony by the witness in the courtroom and in the presence of the defendant would result in the witness suffering serious emotional distress or trauma such that the witness would not be able to reasonably communicate." § 16–10–402(1)(a)(II), C.R.S.2008.

■ Here, the trial court did not make any explicit findings regarding the impact on M.R. of her testifying in defendant's presence. However, in granting the motion, the court implicitly made the requisite determinations.

The record supports the trial court's decision. The social worker who provided therapy to M.R. opined that "it would re-traumatize [M.R.] greatly to testify ... in the physical presence of ... her mother." And, when asked by the court whether M.R.'s ability to communicate would be impaired if she were to testify in court, as opposed to through closed-circuit television, the social worker answered, "I believe as she's realized the enormity of what has happened, she has become more emotionally effected [sic] by reliving these events through discussion." Subsequently, the social worker added, "70 to 80% of the trauma would be associated with seeing her mother, having to testify in her mother's physical presence."

From this testimony, the trial court could reasonably have inferred that forcing an emotionally traumatized ten-year-old child to testify in front of her mother, who had repeatedly assisted in sexually abusing her, would cause her to be unable to reasonably communicate.

■ Defendant asserts, however, that the trial court did not use the precise closed-circuit television procedure prescribed by section 16–10–402. Although we agree, we

conclude that, under the circumstances of this case, the error was harmless.

Under section 16–10–402(2) and (5), C.R.S. 2008, unless the parties stipulate otherwise, the judge, jury, and defendant are to remain in the courtroom, while the witness, the prosecutor, and defense counsel are to go into another room, from which the witness will testify via closed-circuit television. Here, the parties did not stipulate to defendant's, instead of M.R.'s, removal from the courtroom.

Also, under section 16–10–402(2)(c), C.R.S. 2008, a defendant "shall be allowed to communicate ... by an appropriate electronic method" with defense counsel. No electronic method of communication between defendant and her counsel was put into effect here; instead, counsel consulted with defendant only during the recess taken between M.R.'s direct testimony and her cross-examination.

The trial court erred, then, in removing defendant from the courtroom and in not providing an electronic method of communication between defendant and her counsel.

The Michigan Supreme Court has held that a defendant was prejudiced when, in violation of a statutory right to be present during trial, he was removed from the courtroom and allowed to contact his attorney, who remained in the courtroom, only during a recess. The court noted that the defendant "was effectively unable to convey urgent lines of inquiry to his lawyer." *People v. Krueger,* 466 Mich. 50, 643 N.W.2d 223, 226 (2002).

Courts in other jurisdictions have held that the Confrontation Clause or the constitutional right to effective assistance of counsel requires that a defendant at all times be able to communicate with his or her attorney during a witness's closed-circuit testimony. *See Myles v. State,* 602 So.2d 1278, 1279–80 (Fla.1992) (a defendant's right to communicate with his or her attorney during closed-circuit proceedings is a necessary component of a defendant's state constitutional right to counsel; use of an oral relay system, in which the defendant would be required to communicate with counsel by oral messages delivered by bailiff, violated right under state constitution to assistance of counsel); *People*

v. *Fletcher,* 328 Ill.App.3d 1062, 263 Ill.Dec. 312, 768 N.E.2d 72, 80 (2002) (trial court's failure to provide means of electronic communication with persons in room where victim is testifying denied the defendant access to counsel in violation of his Sixth Amendment right to counsel); *Price v. Commonwealth,* 31 S.W.3d 885, 892 (Ky.2000) (the defendant's removal from the courtroom to watch witness's testimony over closed-circuit television, without means of continuous audio contact with defense counsel, violated not only the defendant's statutory rights, but also his constitutional rights to confrontation and to be present at every critical stage of trial); *State v. Warford,* 223 Neb. 368, 389 N.W.2d 575, 582 (1986) ("lack of communication between the courtroom and the room in which the witness was testifying unduly inhibited the defendant's confrontation right and was therefore constitutionally objectionable").

■ Two types of errors of constitutional magnitude may occur during the course of a criminal proceeding, namely, "trial errors" and "structural errors":

> Trial errors are those that may be quantitatively assessed in the context of other evidence presented and are therefore subject to harmless and plain error analyses. Structural errors are the consequences of a defect in the trial that is necessarily unquantifiable and indeterminate, rendering the entire trial fundamentally unfair and warranting automatic reversal.

*People v. Geisendorfer,* 991 P.2d 308, 310 (Colo.App.1999).

■ "[M]ost errors do not automatically render a trial unfair," *Sherman v. Smith,* 89 F.3d 1134, 1137 (4th Cir.1996), but are trial errors subject to harmless or plain error review. *Geisendorfer,* 991 P.2d at 310.

■ Violations of constitutional rights to confront adverse witnesses and to be present during trial are "trial," not "structural," errors. *See Arteaga–Lansaw v. People,* 159 P.3d 107, 110 (Colo.2007) ("Confrontation Clause violations are in the nature of trial, rather than structural, error."); *People v. Grace,* 55 P.3d 165, 168–69 (Colo.App.2001)

(rejecting structural error analysis of violation of the right to be present).

■ Where trial error is of constitutional dimension, reversal is required unless the appellate court is persuaded beyond a reasonable doubt that the error did not contribute to the conviction. *People v. Scearce,* 87 P.3d 228, 230 (Colo.App.2003). Where, however, trial error is of a nonconstitutional magnitude, the error will be disregarded unless there is a reasonable probability that the error contributed to the defendant's conviction. *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001).

We need not decide here whether defendant's removal from the courtroom, without effective means of instantly communicating with counsel, resulted in statutory or constitutional error. This follows because we conclude that reversal would not be required under even the constitutional harmless error test.

■ Under the constitutional harmless error test, "[i]f there is a reasonable possibility that the defendant could have been prejudiced, the error cannot be harmless beyond a reasonable doubt." *People v. Trujillo,* 114 P.3d 27, 32 (Colo.App.2004). Conversely, an error "is harmless beyond a reasonable doubt 'if there is no reasonable possibility that it affected the guilty verdict.'" *People v. Chavez,* 190 P.3d 760, 765 (Colo.App.2007) (quoting, in part, *Arteaga–Lansaw,* 159 P.3d at 110).

■ Defendant asserts that the procedure used by the court prejudiced her in two respects: (1) the jury likely drew an unfair inference from her removal from the courtroom, that is, that M.R. was afraid of her, and thus, she (defendant) was deserving of punishment; and (2) the lack of electronic communication with her attorney impaired her ability to provide additional facts that could have been used, or questions that could have asked, during M.R.'s cross-examination.

With respect to the first point, neither the abuse M.R. suffered, nor defendant's role in that abuse, was disputed. It was, then, readily apparent why, based on the undisputed evidence, M.R. may have been afraid of testifying in defendant's presence. As the

jury was made aware, whether defendant was deserving of punishment depended on whether she acted under duress, an issue separate from whether M.R. had reason to be afraid. Thus, there was no undue risk of an unfair inference against defendant arising from the procedures used.

With respect to the second point, defense counsel never asked to consult with his client before concluding his cross-examination of M.R., and he made no record below regarding what additional facts he could have inquired about if he had been permitted constant electronic contact with his client. To the extent that defendant now suggests that she might have wanted to ask additional questions about the duration or severity of the abuse against her, we note that defense counsel did not specifically inquire as to the time frame in which M.R. observed the abuse against defendant and it appears from the record that M.R. had little, if any, knowledge of those facts.

We agree with defendant that M.R.'s testimony was critical in establishing the severity of the abuse to which defendant was subjected if she did not bring M.R. to her husband, as well as the duration and severity of the abuse defendant suffered overall. In this regard, we observe that the record of M.R.'s testimony reveals that she testified that (1) she knew defendant would be or was beaten if defendant did not participate in bringing M.R. to her father; (2) she was unaware of most of the specific instances of abuse perpetrated against defendant; and (3) she saw the husband hit defendant only "once or twice," but frequently saw bandages from "beatings" by the husband.

M.R.'s testimony, then, was consistent with defendant's theory of defense, and it does not appear that at any point defendant was unable to follow up with a question or confirm M.R.'s story prior to trial. Under these circumstances, we conclude that there was no reasonable possibility that the errors complained of here contributed to defendant's conviction in connection with the assaults on M.R. and, thus, that the errors were harmless beyond a reasonable doubt. *See, e.g., Fletcher*, 263 Ill.Dec. 312, 768 N.E.2d at 80–81 (deprivation of electronic access to counsel harmless constitutional error where evidence at trial included two confessions by defendant, other witness testimony that was uncontroverted, and testimony of closed-circuit witness was cumulative).

Consequently, we conclude that reversal is not warranted on this ground.

## II. Exclusion of Proffered Defense Evidence

Defendant next contends that the trial court denied her constitutional right to present a defense by erroneously excluding (1) evidence that, in her husband's prior marriage, he had severely physically and sexually abused his family members, and (2) relevant expert testimony. We disagree.

### A. Evidence of the Husband's Other Bad Acts

Defendant moved to admit testimony from her husband's former wife and his daughter from his prior marriage regarding the abuse they both suffered at his hands. Defendant asserted that this evidence showed the husband's motive, intent, and modus operandi, and supported her defense of duress by showing a common plan or scheme on the part of the husband to control her.

Prior to trial, the court opined that hearsay evidence of the abuse of the former wife and other daughter was likely to come in through other witnesses. It reserved ruling, however, on whether the former wife and other daughter would be permitted to testify at trial.

When, during trial, the prosecution objected on hearsay grounds to testimony from defendant's son, M.H., about a conversation he had had with the husband's daughter from the prior marriage, defense counsel responded: "Well, the Court has indicated that peripherally, through other witnesses, these [other bad acts of defendant's husband] may come in. If it comes in through this witness, that will be the end of this issue, period."

The trial court overruled the prosecution's objection, and M.H. related what the daughter from the prior marriage told him of the sexual abuse she suffered and of her reluctance, out of fear of the husband, to report

the abuse. Defendant never thereafter sought to call the daughter from the former marriage as a witness.

■ In our view, by telling the court that the other daughter's testimony would be unnecessary if M.H. were permitted to respond, and by failing to call the other daughter as a witness, defendant waived any claim of error arising from the other daughter's not testifying. *See, e.g., United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (distinguishing between "forfeited" and "waived" error; noting that waiver occurs when a defendant specifically removes claims from the trial court's consideration by intentionally "relinquishing or abandoning a known right"; and noting that a "waived" claim of error presents nothing for an appellate court to review); *People v. Abeyta*, 923 P.2d 318, 321 (Colo.App.1996) (where a defendant has waived a right, there is no error or omission by the court, and thus nothing for an appellate court to review).

Regarding the husband's abuse of his former wife, the prosecution cross-examined defendant on her knowledge of that subject. After the prosecution asked defendant whether the former wife had suffered abuse similar to hers, defense counsel argued that the former wife should then be allowed to testify to see if the abuse "was in fact ... similar." The trial court responded that "[defense counsel] was welcome to [his] opinion." Defendant neither brought the matter up again nor sought thereafter to call the former wife as a witness.

■ In our view, the trial court's remark about defense counsel being "welcome to [his] opinion" was ambiguous. Because the court had withheld ruling on the admissibility of the former wife's testimony, it was incumbent upon defendant to press for a definitive ruling before being able to claim on appeal that the court somehow erred. *See Feldstein v. People*, 159 Colo. 107, 111, 410 P.2d 188, 191 (1966) ("[I]t is incumbent on the moving party to see to it that the court rules on the matter he urges. The trial court should be afforded the opportunity to so rule; otherwise, the matter will ordinarily not be considered on writ of error."), *abrogated on other grounds by Deeds v. People*, 747 P.2d 1266

(Colo.1987); *People v. Young*, 923 P.2d 145, 149 (Colo.App.1995) ("because he failed to request [from the trial court] a ruling on this issue, defendant has waived it on appeal").

In any event, we perceive no error.

■ Few rights are more fundamental than the right of the accused to put before the jury evidence that might influence the determination of guilt. *People v. Richards*, 795 P.2d 1343, 1345 (Colo.App.1989). However, the right to present a defense is not absolute; it requires only that the accused be permitted to introduce all relevant and admissible evidence. *People v. Harris*, 43 P.3d 221, 227 (Colo.2002); *see Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988) ("The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

In *People v. Bueno*, 626 P.2d 1167, 1169–70 (Colo.App.1981), a division of this court held that, "[s]ubject to Colorado Rule of Evidence 403 and the general rules of admissibility, ... when offered by the defendant, evidence of similar transactions is admissible so long as it is relevant to the guilt or innocence of the accused." *See also People v. Muniz*, 190 P.3d 774, 780 (Colo.App.2008) (discussing *Bueno* and the admissibility of alternative suspect evidence).

Evidence is relevant if it tends to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. CRE 401. Even relevant evidence is excludable, however, when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403.

■ Trial courts have considerable discretion not only in determining whether evidence has logical relevance, by tending to prove a material fact, *see* CRE 401, but also in balancing the probative value of evidence against the countervailing policy consider-

ations of CRE 403. *People v. Saiz,* 32 P.3d 441, 446 (Colo.2001). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *Muniz,* 190 P.3d at 781.

Here, we perceive no abuse of the trial court's discretion. Defendant testified, without contradiction from the prosecution, that she (1) knew her husband beat his former wife; (2) saw the bruises on the former wife; (3) knew the bruises were a result of abuse perpetrated by her husband; (4) was aware that the former wife had also been chained to the bed; (5) knew her husband had been arrested on domestic violence charges for abuse perpetrated against the former wife; and (6) was aware of this abuse while she was having a relationship with, and before she married, her husband.

Defendant filed a written statement that provided the trial court with a detailed description of the former wife's proposed testimony. Based on this offer of proof, it appears her testimony would have been largely cumulative of the matters testified to by defendant. Indeed, under that offer, the only additional matters to which the former wife would have testified were specific instances and methods in which defendant's husband had abused her. We, like the trial court, conclude that this additional evidence would have had no purpose other than to inflame, distract, or confuse the jury and, as such, it was excludable under CRE 403.

In so concluding, we necessarily reject defendant's assertion that the former wife's testimony was necessary to corroborate defendant's position that she (defendant) suffered severe abuse throughout the entirety of her marriage to her husband. There was no indication in any offer of proof that the former wife would testify to the duration or sustained severity of her abuse. Without this type of testimony, there was no independent corroborative purpose to be served, beyond that which the jury could glean from defendant's testimony about the abuse of the former wife.

Thus, we perceive no error from any exclusion of the former wife's testimony.

### B. Expert Testimony

We also reject defendant's assertion that the trial court improperly excluded expert witness testimony.

Defendant presented an expert to testify generally on the subject of battered woman syndrome. The prosecution cross-examined the expert. On redirect examination, defendant asked the expert whether she could envision certain situations in which a person was so abused and damaged that he or she would engage in conduct at the direction of another person out of fear of the use of force. The prosecutor objected, and the trial court sustained the objection on the following grounds: (1) the question was outside the scope of the prosecutor's cross-examination; (2) the expert had not been shown to be aware of the specific facts of the case; and (3) any opinion by the expert in this area had not properly been disclosed to the prosecution.

■ The trial court has discretion to determine the scope and limits of redirect examination, CRE 401, 403, 611; *People v. Gomez,* 632 P.2d 586, 593 (Colo.1981), and to prohibit a party from introducing material that was not properly disclosed. *People v. Pagan,* 165 P.3d 724, 726 (Colo.App.2006).

■ In her opening brief, defendant does not argue the merits of the trial court's ruling; rather, she simply argues that she was entitled, as a matter of constitutional right, to present evidence relevant to her defense. As indicated earlier, the right to present a defense is not absolute and may be conditioned upon adherence to the rules of evidence. Defendant does not argue an abuse of discretion, and we perceive none, with respect to limiting redirect examination or precluding inquiry into nondisclosed matters of expert opinion. Moreover, another expert testified that defendant acted under duress.

We therefore perceive no error in the court's ruling.

### III. Judicial Bias

Defendant contends that the trial court's comments during the trial, its questioning of two witnesses, and the manner in which it

sustained the prosecutor's objection to the question posed to the expert displayed its partiality towards the prosecution. We are not persuaded.

Defendant relies on the following:

■ At one point, the trial court warned the parties—in what defendant's counsel described on the record as an angry tone—to stop "wallowing in minutia" and to "get real and get some substantive testimony."

■ Following examination of one of defendant's domestic violence expert witnesses, the trial court asked the witness, without any objection, if the defense of duress would apply if the husband had "trained [defendant] to use a high powered rifle and shoot innocent people while the children remained in the house and that if she did not do this he would kill the children?" (The expert answered, "yes.") The trial court then asked the witness, again without objection, whether, given the increase in the severity of the abuse over time, the duress defense would still apply if the abuse against the children had started earlier in the marriage. (The expert answered it would.)

■ The trial court also questioned a police officer, without any objection, as to whether a pillow found in defendant's home by police officers investigating a domestic violence complaint was used to smother defendant or muffle her screams. (The police officer indicated that the pillow had been used to do both.)

■ Defendant's counsel claimed, on the record, that the trial court "exhibited an attitude of exasperation and impatience" in precluding her redirect examination of her expert about a matter which had not been raised on direct or cross-examination.

 A trial judge must be free of any bias, prejudice, or interest directed toward any party or witness, and must avoid making rude comments or entering into discussions showing irritation in the presence of the jury. *People v. Drake,* 748 P.2d 1237, 1249 (Colo.

1988); *People v. Vialpando,* 809 P.2d 1082, 1084 (Colo.App.1990). A trial court judge has wide discretion in conducting a trial, but "must exercise restraint over his or her conduct and statements to maintain an impartial forum." *People v. Coria,* 937 P.2d 386, 391 (Colo.1997).

 Comments that cause counsel disappointment, discomfort, or embarrassment in the presence of the jury, without a showing of prejudice, rarely constitute a deprivation of a fair trial. *Id.* at 391–92. Casual remarks by the trial court while passing on objections to testimony do not constitute reversible error unless they reflect adversely upon the defendant or upon the issue of his or her guilt or innocence. *People v. Corbett,* 199 Colo. 490, 496, 611 P.2d 965, 969 (1980).

 A trial court has the prerogative and, at times, the duty to question witnesses called by a party. CRE 614(b) (trial court may interrogate witnesses); *People v. Ray,* 640 P.2d 262, 264 (Colo.App.1981). However, when a trial judge elects to raise matters to promote a just determination of a trial, the judge must take "great care to insure that he [or she] does not become an advocate," *People v. Adler,* 629 P.2d 569, 573 (Colo.1981), and the purpose of the questions must be to further develop the truth and to clarify testimony already given, *Ray,* 640 P.2d at 264.

 With respect to comments, questions, and ultimately, even a judge's demeanor, more than mere speculation concerning the possibility of prejudice must be demonstrated to warrant a reversal; the record must clearly establish bias. The test is whether the trial judge's conduct so departed from the required impartiality as to deny the defendant a fair trial. *Coria,* 937 P.2d at 391 (court's comments); *Adler,* 629 P.2d at 572 (court's questions); *Ray,* 640 P.2d at 264 (same).

 In our view, the trial judge's conduct did not so depart from

the required impartiality as to deny defendant a fair trial:

■ The judge's comments were directed at both defense counsel and the prosecution. Neither of these comments reflected adversely on defendant; rather, they were directed at the attorneys

and the attorneys' conduct in the courtroom and indicated the court's desire to keep the proceedings moving along.

■ The judge's questions were aimed at further developing the testimony of the witnesses, and were merely cumulative of and intended to clarify testimony previously elicited. It is not at all apparent to us that the questions were slanted toward one side or the other; indeed, the answers given to those questions appear to have been favorable to the defense.

■ Under the circumstances, involving an emotionally-charged atmosphere with highly contentious parties, and under the pressure of a heavy docket, a display of irritation or frustration on the part of the judge would not warrant reversal. *See Drake*, 748 P.2d at 1249 ("The record in this case does reveal incidents of trial court comments to defense counsel that were rude, and some discussions with defense witnesses that evidenced irritation.... We cannot say, however, that the record as a whole establishes that bent of mind against the defendant or his attorney that warrants a finding of bias....").

From the record, we perceive no bias on the part of the trial court.

### IV. *Cumulative Error*

Finally, we reject defendant's contention that her convictions should be reversed because the cumulative effect of errors deprived her of a fair trial. We have found error in but one regard, and it was not sufficiently prejudicial to warrant a new trial. *See People v. Whitman*, 205 P.3d 371, 387 (Colo.App. 2007) ("The doctrine of cumulative error requires that numerous errors be committed, not merely alleged.").

The judgments of conviction are affirmed.

Judge BERNARD and Judge J. JONES concur.