The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 20, 2018

## 2018COA131

## No. 15CA0210, People v. Aldridge — Criminal Law — Trials — Witnesses — Use of Closed Circuit Television

The People moved for child witnesses under the age of twelve

to testify, from another courtroom, outside the defendant's presence

using closed-circuit television under section 16-10-402, C.R.S.

2017.  Over the defendant's objection, the trial court granted that

motion.  At trial, rather than having the witnesses testify from

another room, the trial court permitted the children to testify in the

courtroom while the judge and the defendant watched from the

judge's chambers.  The jury could not see or hear the defendant

during the children's testimony.  A division of the court of appeals

concludes that the procedure violated the defendant's due process

right to be present because the defendant was denied any

opportunity to exert a psychological influence on the jury.

The division also addresses, to the extent the issues are likely to arise on remand, the defendant's claims that (1) the prosecutor improperly bolstered the alleged victims' credibility, (2) evidence was improperly admitted, and (3) the trial court erred in ordering ten consecutive sentences.

Accordingly, the division reverses the judgment of conviction and sentence.

COLORADO COURT OF APPEALS                                    2018COA131

Court of Appeals No. 15CA0210
Chaffee County District Court No. 13CR113
Honorable Charles M. Barton, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Robert Joseph Aldridge,

Defendant-Appellant.

---

JUDGMENT AND SENTENCE REVERSED
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Bernard and Welling, JJ., concur

Announced September 20, 2018

---

Cynthia H. Coffman, Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    This case presents the issue of the intersection of two constitutional rights — a defendant's right to confront the witnesses against him or her and the defendant's right to be present at all critical stages of a trial.  With adequate findings, the former right may yield in a sexual assault case to allow child witnesses to testify in a different room from the defendant, while the latter requires that the defendant and the jury be located in the same room.  Here, the trial court implemented the exception to the right to confrontation of defendant, Robert Joseph Aldridge, by separating him from the alleged child victims.  However, we hold that it did so at the expense of Aldridge's right to be present during their testimony, by requiring that Aldridge be excluded from the courtroom and requiring him to watch the children's testimony from the judge's chambers, along with the judge, outside the presence of the jury.  Accordingly, we reverse Aldridge's judgment of conviction and sentence, and remand for a new trial.

## I.  Background

¶ 2    C.O. and L.A. spent about three weeks camping alone with Aldridge, their maternal grandfather, during the summer of 2013. At the time, C.O. was four years old and L.A. was nine years old.

¶ 3    A few days after she was picked up from Aldridge's campsite, C.O. told her aunt that she had seen and touched Aldridge's "pecker." The aunt later questioned L.A., who eventually confirmed C.O.'s allegations. During separate forensic interviews, C.O. did not report any sexual contact with her grandfather, but L.A. stated that both girls had touched Aldridge's penis during the camping trip and that it got stiff. As a result of the allegations, the People charged Aldridge with two counts of sexual assault on a child by one in a position of trust as part of a pattern of abuse, two counts of sexual assault on a child as part of a pattern of abuse, four counts of sexual assault on a child by one in a position of trust—victim under fifteen, four counts of sexual assault on a child, and two counts of aggravated incest.

¶ 4    At trial, the defense argued that Aldridge was physically incapable of obtaining an erection because he had undergone a prostatectomy as part of his cancer treatment and that strained family dynamics resulted in the alleged victims' false accusations. A jury found Aldridge guilty as charged. The trial court sentenced him to 116 years to life in the custody of the Department of Corrections.

¶ 5　　On appeal, Aldridge contends that the trial court erred by (1) excluding him from the courtroom while C.O. and L.A. testified; (2) permitting witnesses and the prosecutor to improperly bolster the alleged victims' credibility; (3) allowing a detective to give expert testimony that children's clothing found in Aldridge's motor home may have been an "erotic trigger"; and (4) imposing ten consecutive sentences for four acts.　We agree with his first contention and reverse on that basis.

## II.　Exclusion From Courtroom

¶ 6　　Aldridge contends that the trial court violated his right to be present by excluding him from the courtroom when the alleged victims testified, and that the error requires reversal.　We agree.

### A.　Additional Facts

¶ 7　　Before trial, the People moved for C.O. and L.A. to testify by closed-circuit television (CCTV) under section 16-10-402, C.R.S. 2017.　Specifically, the People asked that the children be permitted "to testify outside the presence of the defendant, in a separate courtroom."　The People further represented that CCTV capability existed between the two courtrooms in the county courthouse.

¶ 8     In a written objection, Aldridge argued that allowing the children to testify outside of his presence violated his "due process right to [be] present during critical stages of the proceedings." He argued that "[t]he right to be present isn't satisfied by watching your own trial on TV, even if you are watching it in the company of the judge."

¶ 9     During a motions hearing, the defense primarily argued that the People had not proved that requiring the children to testify in Aldridge's presence would cause them serious emotional distress. The defense also reiterated that it had constitutional concerns that had been addressed in its objection. The trial court granted the People's motion. Neither the trial court nor the parties indicated at the hearing that Aldridge, rather than the children, would be removed from the courtroom.

¶ 10    At the close of the first day of trial and outside the presence of the jury, the trial court explained that the judge, Aldridge, and an investigator from the public defender's office would watch the children's testimony from the judge's chambers while the children

testified in the courtroom.[1]  The trial court instructed that, if Aldridge needed to communicate with defense counsel during the children's testimony, the investigator would relay his comments via an instant messaging system.

¶ 11    The following morning, the People requested that the children's mother be permitted to stay in the courtroom during their testimony under section 16-10-402(2)(a)(V).  Instead, the trial court allowed the children's aunt to stay.  When asked for its position on permitting the aunt to remain in the courtroom, the defense stated that it was "objecting to the whole procedure."

¶ 12    Before the children testified, the trial court and Aldridge tested the CCTV setup outside the jury's presence.  Aldridge confirmed that he was "seeing the picture," but stated that it was "not like

---

[1] The record does not reveal, and the parties do not explain, precisely when the trial court adopted this procedure.  However, at a pretrial hearing less than a week before trial, the trial court represented that court staff had been exploring whether the closed-circuit "television advisement system might be configured to address the child witnesses."  The prosecutor suggested that, assuming the CCTV did not work, the "best [alternative] [she] had was to screen the defendant off . . . while the children testified in the same room."  At the close of that hearing, the trial court said that it would continue to work on the CCTV technology.

5

looking at a person. It [was] bouncy or . . . . It[ was] like something[ was] lagging." After a break off the record, the court clerk reported, "All of our testing is normal." However, Aldridge then said that he had had some trouble hearing his counsel and the prosecutor.

¶ 13     When the jury re-entered the courtroom, Aldridge was in the judge's chambers. The jury could not see or hear him. Before the trial court judge left the courtroom, he explained:

> The Court -- the way the next two witnesses, who are going to be the children, are going to testify is under the Provisions of the Statute. There is separation -- it calls for separation between the child and the Defendant.
>
> In order to do that, the child -- or children, are going to testify from the witness stand here. Mr. Aldridge and I will be in my chambers. And we are going to be on a computer video system.
>
> There's a camera in this, this computer. And so, it's, it's one-way. It will show into chambers, the witness, and we will be able to hear.
>
> The witness will be able to hear. Everyone in the courtroom, of course, and we will be able to hear everyone in the courtroom.
>
> The witness won't be able to see us in chambers. We're hoping this works as well as it can. There may be some interruptions.

> Our IT people from the [State Court]
> Administrator's Office and a private vendor,
> we've worked on this for days. I think we've
> got it pretty well.

The judge also explained that he would be able to communicate into the courtroom over a microphone.

¶ 14 C.O. testified first. In response to the prosecutor's questions, she initially testified that she did not know anyone named "Grandpa Joe" or "Grandpoo" — her nicknames for Aldridge — and that her mother's dad was dead. The trial court called for a brief recess and, once the jury had left, told defense counsel and the prosecutor that Aldridge was "having an emotional meltdown" based on C.O.'s testimony.

¶ 15 After a break, the trial court resumed C.O.'s testimony, during which Aldridge and the judge remained in the judge's chambers. C.O. testified that she had touched Aldridge's "pecker" and that it was hard, but that L.A. had not touched Aldridge's penis. L.A. testified that Aldridge had made her sister "play with his private spot," but that L.A. had not touched his penis. At various points during L.A.'s testimony, the trial court said that it was having difficulty hearing her.

7

B. Preservation and Standard of Review

¶ 16    "Whether a trial court violated a defendant's right to be present is a constitutional question that is reviewed de novo." *People v. Wingfield,* 2014 COA 173, ¶ 13, 411 P.3d 869, 872.

¶ 17    The People urge us to consider the error unpreserved, and therefore to review for plain error, because in their view (1) Aldridge's written objection contained only a "cursory" reference to his right to be present and (2) the defense stood on its prior objection when it became clear the trial court was envisioning having the children testify in the courtroom while Aldridge observed from chambers. We disagree on both counts.

¶ 18    First, we consider Aldridge's argument based on his right to be present in his objection sufficient to "put the trial court on notice of his position" and give it an opportunity to avoid the error. *People v. Pahl,* 169 P.3d 169, 183 (Colo. App. 2006). Moreover, Aldridge continued to object to the trial court's proposed procedure on various grounds, and reiterated that he stood on his original objection. We consider these actions sufficient to preserve this contention. *See People v. Pratt,* 759 P.2d 676, 685 n.5 (Colo. 1988); *see also Uptain v. Huntington Lab, Inc.,* 723 P.2d 1322, 1330-31

8

(Colo. 1986) (objections made in motion in limine constituted a timely objection).

¶ 19    We review preserved constitutional errors for constitutional harmless error, reversing if "there is a reasonable *possibility* that the [error] might have contributed to the conviction." *Hagos v. People*, 2012 CO 63, ¶ 11, 288 P.3d 116, 119 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).  The People bear the burden of proving that the error was harmless beyond a reasonable doubt. *Id.*; *see also Luu v. People*, 841 P.2d 271, 274-75 (Colo. 1992) (characterizing deprivation of the right to be present as a trial error).

### C.  Applicable Law

### 1.  Right to Be Present

¶ 20    A defendant has a constitutional right to be present at his or her criminal trial.  U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Luu*, 841 P.2d at 275; *People v. Ragusa*, 220 P.3d 1002, 1009 (Colo. App. 2009); *see also* Crim. P. 43(a) (stating that a defendant has the right, subject to limited exceptions, to be present "at every stage of the trial").

¶ 21    The right to be present is rooted in part in the Confrontation Clauses of the United States and Colorado Constitutions.  U.S. Const. amend. VI; Colo. Const. art. II, § 16 ("In criminal prosecutions the accused shall have the right to . . . meet the witnesses against him face to face . . . ."); *see United States v. Gagnon*, 470 U.S. 522, 526 (1985).  These clauses protect the defendant's "right to be present at trial to secure the opportunity for full and effective cross-examination of witnesses."  *Luu*, 841 P.2d at 275.

¶ 22    The Due Process Clause, however, affords defendants the right to be present in situations where the Confrontation Clause is not implicated.  *See Gagnon*, 470 U.S. at 526 (stating that the right to be present is rooted in due process principles "in some situations where the defendant is not actually confronting witnesses or evidence against him").  "[D]ue process clearly requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence.'"  *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934)).  Thus, the Due Process Clause protects a defendant's right to be present at all "critical" stages of his or her

trial. *Id.* "A critical stage of criminal proceedings is one where there exists more than a minimal risk that the absence of the defendant might impair his or her right to a fair trial." *People v. Cardenas,* 2015 COA 94M, ¶ 22, 411 P.3d 956, 963.

## 2. Section 16-10-402 and the Confrontation Clause

¶ 23 A Colorado statute provides a mechanism by which witnesses under the age of twelve can testify "in a room other than the courtroom and be televised by closed-circuit television [CCTV] in the courtroom." § 16-10-402(1)(a). Several conditions must be met before a child witness can testify by CCTV under this statute, including a determination by the trial court "that testimony by the witness in the courtroom and in the presence of the defendant would result in the witness suffering serious emotional distress or trauma such that the witness would not be able to reasonably communicate." § 16-10-402(1)(a)(II).

¶ 24 Under section 16-10-402(2)(a), only specified people may be in the room with the child witness when he or she testifies by CCTV — the prosecutor, defense counsel, the child's guardian ad litem, operators of the CCTV equipment, "[a] person whose presence, in the opinion of the court, contributes to the welfare and well-being of

the witness," and the jury. § 16-10-402(2)(a)(I)-(VI). "During the witness's testimony by closed-circuit television, the judge and the defendant, if present, shall remain in the courtroom." § 16-10-402(2)(b); *see also* § 16-10-402(2)(c) ("The judge and the defendant shall be allowed to communicate with the persons in the room where the witness is testifying by an appropriate electronic method."). However, the statute does not "preclude the removal of the defendant, rather than the witness, from the courtroom *upon the stipulation of both parties and the approval of the court.*" § 16-10-402(5) (emphasis added).

¶ 25    This provision provides a narrow statutory exception to the requirements of the Confrontation Clauses. U.S. Const. amend. VI; Colo. Const. art. II, § 16. In *Maryland v. Craig*, the Supreme Court upheld a similar law, concluding,

> where necessary to protect a child witness
> from trauma that would be caused by
> testifying in the physical presence of the
> defendant, at least where such trauma would
> impair the child's ability to communicate, the
> Confrontation Clause does not prohibit use of
> a procedure that, despite the absence of face-
> to-face confrontation, ensures the reliability of
> the evidence.

12

497 U.S. 836, 857 (1990). Thus, the Court in *Craig* held that the Confrontation Clause does not "categorically prohibit[] a child witness . . . from testifying against a defendant at trial, outside the defendant's physical presence, by one-way closed circuit television." *Id.* at 840; *see also People v. Phillips*, 2012 COA 176, ¶¶ 51, 59, 315 P.3d 136, 150, 153 (concluding that there was no violation of defendant's federal or state confrontation rights when child testified by CCTV from another room under section 16-10-402). However, in *Craig*, the Maryland statute at issue provided for "the child witness, prosecutor, and defense counsel [to] withdraw to a separate room; the judge, jury, and defendant remain in the courtroom." *Craig*, 497 U.S. at 841. Because the defendant along with the judge and jury, remained in the courtroom in *Craig*, the Court had no need to consider whether the procedure violated the defendant's right to be present. *See id.* at 842 ("Craig objected to the use of the procedure on Confrontation Clause grounds . . . .").

## D. Analysis

¶ 26 Aldridge contends that the trial court erred in excluding him from the courtroom during the alleged victims' testimony. We agree.

13

¶ 27    At the outset, the People concede that the trial court "did not strictly comply" with the procedure set forth in section 16-10-402. Although the statute does not preclude the removal of the defendant from the courtroom upon the stipulation of both parties and the approval of the court, it is undisputed that Aldridge did not stipulate to his removal in this case. Because the People initially moved for the witnesses to testify from another courtroom by CCTV, it is not clear whether the People stipulated to the procedure used. Indeed, the record does not indicate when the trial court announced the procedure it adopted, or the People's response, especially given their request to have the children testify in another courtroom, with Aldridge remaining in the courtroom.[2] Thus, we conclude that the

---

[2] The record suggests that the trial court used the procedure here due to technological difficulties in having the children testify from another room and televising their testimony in the courtroom. To the extent the People suggested at oral argument that section 16-10-402, C.R.S. 2017, permits a trial court to remove a defendant from the courtroom during a child's in-court testimony if there are difficulties in setting up CCTV equipment (or no CCTV equipment at all), we disagree. One prerequisite to invoking the procedure in that statute is that "[c]losed-circuit television equipment is available for such use." § 16-10-402(1)(a)(III). If that equipment is not available (or suitable to comply with the statute), neither party can move to

trial court's decision to remove Aldridge from the courtroom rather than permit the witnesses to testify by CCTV from another room ran afoul of the statutory provision.[3]

¶ 28 Our determination is in accord with the division's analysis in *People v. Rodriguez*, 209 P.3d 1151 (Colo. App. 2008), *aff'd by an equally divided court*, 238 P.3d 1283 (Colo. 2010). There, the division concluded that the trial court erred by removing the defendant during a child's testimony without adhering to the procedure set forth in section 16-10-402, though the division also concluded that the error was harmless. *Id.* at 1158. In *Rodriguez*, like here, "the parties did not stipulate to defendant's, instead of [the witness's], removal from the courtroom." *Id.* at 1157; *see also id.* (concluding that the trial court also erred by "not providing an

_____

have a child testify from outside the courtroom, and the trial court cannot order such a procedure on its own motion.

[3] It is unclear from the record whether the trial court otherwise complied with the requirements of section 16-10-402(2)(a) by allowing only those authorized by the statute to remain in the courtroom. Although the parties and the trial court discussed section 16-10-402(2)(a)(V), and the trial court ruled that the children's aunt could remain in the courtroom when they testified, the record does not indicate whether the trial court excluded other spectators.

15

electronic method of communication between defendant and her counsel").

¶ 29     We further conclude that the procedure here violated Aldridge's constitutional right to be present under the Due Process Clause.  In other contexts, divisions of this court have concluded that a defendant's removal or absence from the courtroom during a trial court's communications with the jury violated the defendant's due process right to be present during a critical stage of trial.  *See, e.g.*, *People v. Payne*, 2014 COA 81, ¶ 20, 361 P.3d 1040, 1044 (defendant's absence when trial court read modified *Allen* jury instruction violated right to be present).  These cases have acknowledged that the defendant's in-court presence "can have a psychological impact on the jury that may benefit the defendant." *Id.* at ¶ 12, 361 P.3d at 1043; *see also Larson v. Tansy*, 911 F.2d 392, 395-96 (10th Cir. 1990) ("[O]n the issue of defendant's absence from jury instructions, closing arguments, and the rendition of the verdict, we hold that defendant was deprived of his due process right to exert a psychological influence upon the jury . . . .").  Thus, implicit in the defendant's due process right to be present is the defendant's right to be present *in the same room as the jury.  Cf.*

16

*People v. Lujan*, 2018 COA 95, ¶ 11, ___ P.3d ___, ___ (concluding that the defendant's right to a public trial was violated when the trial court answered the jury's questions during deliberation in the absence of the parties, contrary to "proper court practices that place the jury and parties together").

¶ 30     Here, Aldridge was removed from the courtroom during a particularly critical phase of the trial — namely, the alleged victims' testimony. The jury could not see Aldridge when that testimony was taken. Thus, the procedure violated not only the statutory provision, but also Aldridge's due process right to be present at his own trial because he was denied any opportunity to exert psychological influence on the jury.[4]

---

[4] Section 16-10-402(2)(a)(VI) authorizes, but does not require, the jury to be in the room with the child witness when he or she testifies by CCTV. The statute therefore appears to permit a procedure in which the defendant remains in the courtroom with the judge, while the prosecutor, defense counsel, and the jury are in another room with the child witness. We note that such a procedure may well raise the same due process concerns we address here because in that scenario the defendant would similarly be denied the opportunity to exert any psychological influence on the jury. However, Aldridge did not challenge the constitutionality of section 16-10-402(2)(a)(VI) in the trial court or

¶ 31    Nevertheless, the People maintain that the procedure used here did not violate Aldridge's constitutional rights because the evidence was sufficiently reliable under *Craig*, 497 U.S. at 857. We are not persuaded. In *Craig*, the Supreme Court addressed whether allowing a child witness to testify by CCTV from outside the courtroom violated a defendant's right to confront the witness. *See generally id.* at 856-58. Thus, *Craig* is distinguishable because here, the *defendant* was removed from the courtroom and alleges that the procedure offended his right to be present (not just his right to confront the witnesses).

¶ 32    As Aldridge asserts, multiple courts have held that the removal of the defendant from the courtroom during a child witness's testimony constitutes error. *See, e.g., Price v. Commonwealth*, 31 S.W.3d 885, 894 (Ky. 2000) (holding that defendant's removal from the courtroom to watch witness's testimony over CCTV, without means of continuous audio contact with defense counsel, violated not only statute, but also defendant's right to be present); *People v.*

_____

on appeal, and we therefore express no opinion on the validity of that provision if implemented in such a fashion.

*Krueger*, 643 N.W.2d 223, 225-26 (Mich. 2002) (concluding defendant's removal violated state statute). We join that authority.

¶ 33 In sum, Aldridge's exclusion from the courtroom during the children's testimony, in the absence of a stipulation, violated section 16-10-402 and his due process right to be present.

### E. Constitutional Harmless Error

¶ 34 We review for constitutional harmless error. Under that standard, we conclude the error requires reversal because the People have not demonstrated that it was harmless beyond a reasonable doubt.

¶ 35 As noted, in *Rodriguez*, the division concluded that defendant's erroneous removal from the courtroom did not require reversal. 209 P.3d at 1155. There, defense counsel generally "expressed concern" about separating the defendant and the witness during testimony, but "was noncommittal about whether, if a closed-circuit television procedure were utilized, the witness or defendant should remain in the courtroom." *Id.* Thus, the division considered it "not altogether evident" that the defendant had preserved any objection to her removal. *Id.* at 1156.

¶ 36    In any event, the *Rodriguez* division concluded that the error there was harmless beyond a reasonable doubt for two reasons. *Id.* at 1158. First, the child witness's testimony in *Rodriguez* was consistent with the defendant's theory of the case — the defendant did not contest her role in inflicting abuse on the child, but rather argued that she acted under duress. *Id.* at 1159. Second, the defendant did not demonstrate that the lack of ability to communicate with her counsel impaired her defense. *Id.* at 1158-59; *see also id.* at 1159 (noting that trial counsel "made no record below regarding what additional facts he could have inquired about if he had been permitted constant electronic contact with his client").

¶ 37    Here, the People do not contend that any error is rendered less significant by virtue of Aldridge's ability to communicate electronically with his counsel during the children's testimony.

¶ 38    More significantly, unlike in *Rodriguez*, the children's testimony here was crucial evidence against Aldridge and ran directly contrary to his theory of the case. Especially because the alleged victims offered shifting accounts of the assaults and there was no physical evidence, there is at least a reasonable possibility

that the error here contributed to Aldridge's convictions. *Accord*

*People v. Relaford*, 2016 COA 99, ¶ 44, 409 P.3d 490, 498 (noting

that evidentiary errors have been considered reversible in cases

where there was no physical evidence of, or third-party eyewitness

testimony to, alleged sexual assaults).

¶ 39    We also disagree with the People's contention that there is no

authority that gives a criminal defendant the right to have the jury

observe his or her reaction to witnesses' testimony. As discussed,

the division in *Payne* concluded that a defendant has a due process

right to be present in part "because of the psychological influence

his absence or presence may have on the jury." ¶ 18, 361 P.3d at

1044. Here in particular, Aldridge's absence during the children's

testimony may well have been prejudicial because the jury was

prevented from observing the extent of his "emotional meltdown" in

reaction to C.O.'s testimony. Because the jury could not see

Aldridge, he was unable to "exert[] any psychological influence" on

it. *Larson*, 911 F.2d at 396.

¶ 40    Accordingly, we conclude that the judgment of conviction must

be reversed because Aldridge's erroneous exclusion from the

21

courtroom during the children's testimony was not harmless beyond a reasonable doubt.

## III. Other Contentions

¶ 41    We briefly address Aldridge's remaining contentions to provide guidance on remand.

## A. Credibility Bolstering

¶ 42    Aldridge contends that the trial court erred in permitting testimony and argument bolstering the alleged victims' credibility.

¶ 43    Because the precise testimony and argument are unlikely to arise in the same context on remand, we do not address each alleged instance of improper bolstering. However, we note two general principles relevant to Aldridge's contention: (1) neither lay nor expert witnesses may give opinion testimony that another witness was telling the truth on a specific occasion; and (2) it is impermissible for the prosecutor to express a personal opinion about the veracity of a witness. *See Liggett v. People*, 135 P.3d 725, 732 (Colo. 2006) ("[A]sking a witness to opine on the veracity of another witness is prejudicial, argumentative, and ultimately invades the province of the fact-finder."); *Domingo-Gomez v. People*, 125 P.3d 1043, 1050 (Colo. 2005) ("[P]rosecutorial remarks that

22

evidence personal opinion, personal knowledge, or inflame the passions of the jury are improper."). *See generally People v. Wittrein*, 221 P.3d 1076, 1081 (Colo. 2009) (discussing case law on testimony regarding child victim's believability and credibility).

## B. Detective's Testimony

¶ 44    Aldridge contends that the trial court erred in allowing a detective to offer expert testimony that girls' underwear found in Aldridge's motor home could have been an "erotic trigger." He argues that the testimony had little or no probative value and was highly prejudicial, and that he was deprived of an opportunity to effectively cross-examine the detective because the People had not disclosed the detective as an expert witness before trial. For their part, the People contend that Aldridge opened the door to the challenged testimony by asking the detective whether he had found any pornography or "Viagra or anything like that" in the motor home.

¶ 45    Because this precise issue is unlikely to arise in this context on remand, we decline to address it. *See People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004) (declining to address evidentiary

issue unlikely to arise "in the same context" on retrial), *aff'd*, 119 P.3d 1073 (Colo. 2005).

## C. Consecutive Sentences

¶ 46     Aldridge contends, the People concede, and we agree that the trial court erred by imposing consecutive sentences for ten of the convictions.

¶ 47     Generally, a trial court "has the discretion to impose either concurrent or consecutive sentences." *Juhl v. People*, 172 P.3d 896, 899 (Colo. 2007).  However, under section 18-1-408(3), C.R.S. 2017, "when the district attorney prosecutes two or more offenses based on the same act or series of acts arising from the same criminal episode and the defendant is found guilty of more than one count on the basis of identical evidence, the sentences imposed must run concurrently." *Juhl*, 172 P.3d at 899.

¶ 48     Here, the prosecution alleged that C.O. and L.A. were both subject to multiple sexual assaults during the charged timeframe, but did not establish distinct acts of sexual assault.  Rather, the prosecution relied on identical evidence to establish the sexual assault on a child, sexual assault on a child by one in a position of trust, and aggravated incest charges as to each victim.  Thus, the

trial court erred in imposing ten consecutive sentences based on the evidence presented and the jury's verdicts.

¶ 49    If the jury finds Aldridge guilty of more than one count per victim on retrial, the trial court must impose sentences in accordance with section 18-1-408(3), *Juhl*, 172 P.3d at 899, and *Quintano v. People*, 105 P.3d 585, 589-92 (Colo. 2005).

## IV.  Conclusion

¶ 50    Accordingly, the judgment and sentence are reversed, and the case is remanded for a new trial.

JUDGE BERNARD and JUDGE WELLING concur.