2014 COA 82

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Victor Cirilo ACOSTA, Defendant– Appellant.**

**Court of Appeals No. 10CA0790**

Colorado Court of Appeals, Div. II.

Announced July 3, 2014

John W. Suthers, Attorney General, Nicole D. Wiggins, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE CASEBOLT

¶ 1 Defendant, Victor Cirilo Acosta, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child. He asserts that the trial court erred by refusing to sanction the prosecution for a discovery violation, admitting testimony that he was "very guilty-looking" after the assault, admitting a prejudicial hearsay statement, and instructing the prosecutor on how to introduce an item of evidence. We disagree and thus affirm.

## I. Background

¶ 2 Defendant attended a party in his apartment complex that was hosted by a couple he did not know. A number of adult couples attended the party. At least two children, including the seven-year-old victim, C.L., were also present. At some point, defendant called his female friend J.H. and invited her to join the party, which she did.

¶ 3 Toward the end of the party, the adults were in one room (the tattoo room) of the apartment drinking alcohol and smoking marijuana while C.L. and her friend, six-year-old C.C., watched television in the adjacent living room. C.L. and C.C. were lying down on separate couches. The kitchen was on the other side of the apartment so that the adults had to cross the living room to get to the kitchen.

¶ 4 Defendant left the tattoo room on a number of occasions, always returning with a drink for himself or another guest. After defendant left the room several times, C.C.'s mother became suspicious and followed him out of the tattoo room. When she entered the living room, she saw defendant kneeling next to C.L. with one hand over C.L.'s head and the other hand "down there by her private area." She could not see what he was doing with his hand.

¶ 5 C.C.'s mother became angry, returned to the tattoo room, and told her husband to make defendant leave the party. C.C.'s father went into the living room and also saw defendant kneeling next to C.L. with his arm around her and one hand on her belly, near her belt line. C.L.'s shirt was pulled halfway up. C.C.'s father saw defendant's face very

close to C.L.'s face, and he was whispering to her.

¶ 6 C.C.'s father angrily told defendant, with a raised voice, that he needed to leave the party. Defendant returned to the tattoo room to get J.H. At trial, J.H. testified that when defendant came back into the tattoo room at this time, he was "very guilty-looking." Defendant and J.H. left the party together.

¶ 7 About an hour and a half later, C.L.'s parents called the police to report the incident. C.L. told the responding officer, and later a forensic interviewer, that defendant told her she was beautiful, kissed her on the lips, touched her on "the part where I pee," and pointed to her vaginal area.

¶ 8 Police arrested defendant and charged him with one count of sexual assault on a child. This appeal followed defendant's conviction.

## II. Discovery Violation

¶ 9 Defendant asserts that the trial court erred by refusing to sanction the prosecution for withholding, until just before trial, the fourth interrogation of defendant, and for misrepresenting the content of the interrogation. We disagree.

### A. Preservation and Standard of Review

¶ 10 Defendant preserved this issue for review. We review for an abuse of discretion a trial court's resolution of discovery issues and its decision whether to impose sanctions for discovery violations. *People v. Bueno*, 2013 COA 151, ¶ 10, —— P.3d ——. " 'Because of the multiplicity of considerations involved and the uniqueness of each case, great deference is owed to trial courts in this regard, and therefore an order imposing a discovery sanction will not be disturbed on appeal unless it is manifestly arbitrary, unreasonable, or unfair.' " *Id.* (quoting *People v. Lee*, 18 P.3d 192, 196 (Colo.2001)).

### B. Law

¶ 11 In a criminal case, the prosecution must make available to the defendant any "written or recorded statements of the accused." Crim. P. 16(I)(a)(1) (VIII). The prosecution must also make available any material or information within its possession or control (or the possession or control of its staff and any others who have participated in the investigation of the case), which "tends to negate the guilt of the accused." Crim. P. 16(I)(a)(2)-(3); *Bueno*, ¶ 11 (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)).

¶ 12 "Discovery sanctions serve the dual purposes of protecting the integrity of the truth-finding process and deterring prosecutorial misconduct." *People v. Zadra*, 2013 COA 140, ¶ 15, —— P.3d ——. A trial court should impose the least severe sanction that will ensure full compliance with its discovery orders and protect the defendant's right to due process. *Id.*

¶ 13 When determining an appropriate sanction for a discovery violation, a trial court should consider "(1) the reason for the delay; (2) any prejudice a party suffered because of the delay; and (3) the feasibility of curing any prejudice through a continuance or recess during trial." *Id.* at ¶ 16 (citing *Lee*, 18 P.3d at 196); *see also People v. Castro*, 854 P.2d 1262, 1265 (Colo.1993).

¶ 14 "Dismissal is a drastic sanction, typically reserved for willful misconduct." *Zadra*, ¶ 17; *Lee*, 18 P.3d at 196 (absent willful misconduct or a pattern of neglect, "the rationale for a deterrent sanction loses much of its force"). In *Zadra*, ¶ 18, a division of this court concluded that a prosecutor had not willfully violated the discovery obligations of Crim. P. 16 by late disclosure of an interrogation recording because the prosecutor shared the recording soon after receiving it from investigators. The division also discerned no willful conduct and no prejudice from the prosecutor's failure to provide defendant's handwritten notes until mid-trial, because the prosecutor was not aware of their existence until an officer disclosed their existence on the witness stand, defendant's counsel received the notes "in time to briefly review them and use them in cross-examination" of the officer, and the defendant had written the notes and given them to investigators, so they were no surprise to her. *Id.* at ¶¶ 18–20.

¶ 15 In considering sanctions, a trial court should "be cautious not to affect the evidence to be introduced at trial or the merits of the case any more than necessary," and should, if at all possible, "avoid excluding evidence as a means of remedying a discovery violation because the attendant windfall to the party against whom such evidence would have been offered defeats, rather than furthers, the objectives of discovery." *Lee*, 18 P.3d at 197. Thus, "exclusion of evidence is an inappropriate sanction where exculpatory evidence, although inadvertently withheld prior to the preliminary hearing, was revealed prior to trial." *People v. Dist. Court*, 808 P.2d 831, 837 (Colo.1991); *see also Lee*, 18 P.3d at 194–98 (holding that the trial court abused its discretion by excluding DNA evidence when the record did not support a finding that the prosecutor had willfully violated discovery rules).

¶ 16 When imposing a sanction that is not designed primarily to deter improper behavior, "the goal must be to cure any prejudice resulting from the violation." *Lee*, 18 P.3d at 197. Absent a showing of prejudice resulting from the discovery violation, there is no reversible error. *Zadra*, ¶ 20 (" 'Failure to comply with discovery rules is not reversible error absent a demonstration of prejudice to the defendant.' " (quoting *Salazar v. People*, 870 P.2d 1215, 1220 (Colo. 1994))).

### C. Application

¶ 17 Here, defendant contends that the trial court erred by refusing to sanction the prosecution for withholding the existence of a fourth police interrogation of defendant until the day before trial commenced and for misrepresenting the contents of the interrogation. We disagree.

¶ 18 Police interviewed defendant four times. The prosecution timely disclosed the first two interrogations and a summary of the third interview. But for unstated reasons, it did not disclose, until the day before jury selection commenced, the existence and content of a fourth interview and a supplemental disclosure concerning the third interview. At the time the prosecutor provided the additional interview recordings, the investigating detective told the defense that they contained "just arrest information," and "nothing of material evidence or exculpatory value."

¶ 19 The court deferred jury selection the first day of trial to permit the defense to review the recordings. At a status conference later that day, the court offered defendant a continuance to review and prepare in light of the newly-disclosed evidence. Defense counsel informed the court that a continuance was unnecessary because the new evidence did not change the defense theory of the case or strategy in such a way that it would require additional investigation.

¶ 20 The next morning, before jury selection began, defendant requested sanctions for the late disclosure because the recording of the fourth interview contained new exculpatory evidence. He requested dismissal of the case, preclusion of the interviewing detective's testimony entirely, or exclusion of any evidence that resulted from the third interrogation. The prosecution responded that such sanctions would be too drastic and inappropriate because defendant had not argued or shown any prejudice resulting from the late disclosure.

¶ 21 The court found a discovery violation, but stated that dismissal would be too drastic a remedy. It initially precluded the prosecution from using the fourth interrogation as a sanction for the late disclosure. However, upon learning that defendant sought only preclusion of the third interrogation and being reminded that defendant had received timely disclosure of that material, the court changed its ruling and declined to preclude the prosecution from using the third interrogation in its case-in-chief. As a result, the court imposed no sanction against the prosecution.

¶ 22 We first reject defendant's argument that this discovery violation was the result of willful misconduct. Defendant conceded before trial that the prosecutor "probably" had provided the evidence as soon as he became aware of it. *See Zadra*, ¶ 18 (no willful misconduct when the prosecutor disclosed evidence to defendant soon after receiving it from investigators).

¶ 23 We also do not discern any prejudice resulting from the late disclosure. Defendant received the evidence before the trial began, he was offered additional time to effectively review it but refused a continuance, and he was able to use the information during cross-examination of the detective. In addition, defendant and the People appear to agree on appeal that the prosecution did not use information from the third interview at trial. *See id.* at ¶¶ 18–20.

¶ 24 Hence, we perceive no abuse of discretion by the trial court in refusing to dismiss the case or preclude the prosecution's use of the third interrogation. Trial courts should impose the least severe sanction necessary for a discovery violation, the record does not support a finding of willful misconduct or prejudice resulting from the late disclosure, and defendant refused a continuance when the court offered one. *Id.* at ¶¶ 15, 20 (a violation of discovery rules is not reversible error without a showing of prejudice); *Lee,* 18 P.3d at 196; *Dist. Court,* 808 P.2d at 837 (exclusion is an inappropriate sanction when evidence that is inadvertently withheld before a pretrial conference is disclosed before trial).

¶ 25 For similar reasons, we reject defendant's contention that the court did not consider all the factors outlined in *Castro,* 854 P.2d at 1265. The court considered whether there was prejudice as well as the feasibility of a continuance. Although the prosecutor offered no reason for the late disclosure, and the record discloses none, we do not perceive that this factor is by itself determinative.

### III. Witness Testimony

¶ 26 Defendant asserts that the trial court violated his right to due process and CRE 701, CRE 401, CRE 403, and CRE 608 by allowing J.H. to testify that defendant was "very guilty-looking" following the incident. We disagree.

### A. Preservation and Standard of Review

¶ 27 Defendant preserved these issues for review. "We review a trial court's decision to admit or exclude opinion testimony for an abuse of discretion." *People v. Beilke,* 232 P.3d 146, 152 (Colo.App.2009). A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *Id.* at 151.

### B. Trial Testimony

¶ 28 C.C.'s father testified that he told defendant that he needed to "get the fuck out" of the apartment after he observed defendant's actions with C.L. Defendant asked why and what was going on, and C.C.'s father replied, "You know what you did." Defendant immediately returned to the tattoo room to get his friend J.H. and leave.

¶ 29 The prosecution asked J.H. at trial how defendant looked immediately after the incident. J.H. responded, over defendant's objection, that "he was very guilty-looking," and that "he didn't defend himself when they accused him of doing anything." She further testified that when C.C.'s father told defendant to "tell them what you did," defendant said nothing and did not defend himself.

¶ 30 The prosecutor then asked J.H. what she meant by her statement and what defendant was doing physically. She stated that it was difficult to explain what he was doing, but offered to demonstrate for the jury. She then attempted to describe his actions by saying, "Well, he was just kind of, like, standing there, like, looking real—I don't know if he was just … his hands were behind his back, and he was looking down and looking up." J.H. also acknowledged telling the investigating officer that defendant looked like a little child or a dog would when he or she had done something wrong.

### C. Law and Application

#### 1. Lay Opinion

¶ 31 Under CRE 701, a lay witness may give opinion testimony. However, such opinions or inferences are limited to those that are (a) "rationally based on" the perception of the witness, (b) "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue," and (c) "not based on scientific, technical, or other specialized knowledge." *People v. Russell,* 2014 COA 21, ¶ 19, — P.3d —.

¶ 32 "A lay witness can provide opinion testimony regarding an ultimate issue to be decided by the trier of fact under certain circumstances." *Beilke,* 232 P.3d at 152; CRE 704. The witness's opinion does not invade the province of the jury because nothing can compel the jury to accept the witness's opinion over its own. *People v. Collins,* 730 P.2d 293, 305 (Colo.1986). But a lay witness may not testify regarding whether a particular legal standard has or has not been met, and "[t]he question that elicits the opinion testimony must be phrased to ask for a factual, rather than a legal opinion." *Beilke,* 232 P.3d at 152. CRE 701 and CRE 403 "afford ample assurances against the admission of opinions which would merely tell the jury what result to reach." *Collins,* 730 P.2d at 306.

¶ 33 In Colorado, it is well established that a lay witness may give a summary opinion of another person's behavior, motivation, intent, or state of mind if certain conditions are met. "When ... a witness has personally observed the physical activity of another, and summarizes his 'sensory impressions thereof,' the witness'[s] conclusions are admissible." *People v. Farley,* 712 P.2d 1116, 1119 (Colo.App.1985) (quoting *Elliott v. People,* 176 Colo. 373, 377, 490 P.2d 687, 689 (1971)); *see also People v. Jones,* 907 P.2d 667, 669 (Colo.App.1995) ("A lay witness may state an opinion about another person's motivation or intent only if the witness had sufficient opportunity to observe the person and to draw ·a rational conclusion about the person's state of mind; an opinion that is speculative or not based on personal knowledge is not admissible.").

¶ 34 The rationale for allowing such opinions recognizes the difficulty in factually describing an emotional event, the helpfulness of these opinions to the jury, and the fact that the witness is subject to cross-examination concerning the opinion's "limitations and any contrary indications." *Jones,* 907 P.2d at 669; *see People v. Rubanowitz,* 673 P.2d 45, 47 (Colo.App.1983) ("Common experience strongly suggests that contemporaneous firsthand observation yields valuable impressions which cannot adequately be conveyed later by objective descriptions of ·outward behavior." (internal quotation marks omitted)).

¶ 35 In *Elliott,* 176 Colo. at 377, 490 P.2d at 689, the supreme court held it was permissible for a lay witness to testify that the defendant "was getting ready to hit the owner of the store" because, "[w]hile it is axiomatic that witnesses should relate facts and not conclusions, an exception to this rule exists ·when a witness has personally, observed the physical activity of another, and summarizes his sensory impressions thereof because they ... can hardly be described in any other manner." (Internal quotation marks omitted.) The court reasoned that these summary conclusions must be admissible because "it would be difficult, if not impossible, to accurately and vividly describe [the] defendant's bodily movements to the jury in a completely factual manner." *Id.* The court also noted that the witness had immediately qualified her opinion by stating that it "looked like" the defendant was about to hit the victim. *Id.; see also Collins,* 730 P.2d at 307 (holding that it was permissible for a lay witness to opine that it was unnecessary for defendant to use a deadly weapon during an altercation because. it was "an opinion based on factual observations which conveyed information that a mere description of the participant's behavior could not").

¶ 36 In *Farley,* 712 P.2d at 1118, the defendant was charged with first degree sexual assault and second degree kidnapping. At trial, the prosecution called a counselor who had assisted the police in investigating the crime. The counselor had interviewed the victim for approximately three hours on the day of the assault.

¶ 37 The counselor did not testify as an expert witness. She testified that she made observations about the victim's physical demeanor. The prosecutor then asked, "And based upon your observations, what was her state of mind?" The court permitted the counselor to testify that the victim was "in a state of shock." The counselor then went on to describe the victim's demeanor and physical appearance that had led the counselor to her summary conclusion.

¶ 38 In affirming the admissibility of the counselor's testimony, a division of this court

held that the testimony was a proper lay witness opinion under CRE 701 because it was rationally based on the witness's perception, it was short and general, it "consisted almost exclusively of the witness'[s] observations of the demeanor of the victim," and it did not consist of an opinion that the witness "either believed the victim or that [the victim] had been raped." *Id.* at 1119. The division stated that although the testimony did go further than mere observations of the victim, it was not an improper opinion and was not a direct comment concerning the credibility of the victim.

¶ 39 In *Rubanowitz*, 673 P.2d at 47, a division of this court held that "[t]he requirement of CRE 701(b) as to the testimony's helpfulness to the jury is satisfied when a witness'[s] expression of his opinion provides the jury with his overall impression and brings the particulars into focus." (Internal quotation marks omitted.)

¶ 40 However, the parties do not cite, and we are not aware of, any Colorado cases dealing specifically with a witness's use of the word "guilty" when describing a defendant's demeanor or behavior. Thus, we may look for guidance on this issue to cases outside Colorado. *See Air Commc'n & Satellite Inc. v. EchoStar Satellite Corp.*, 38 P.3d 1246, 1251 (Colo.2002) (when rule is patterned on federal precedent and that of other states with a similar rule, those authorities may be consulted in construing the provisions of Colorado's rule).

¶ 41 The only published case we have located that directly addresses this issue is *State v. Braxton*, 352 N.C. 158, 531 S.E.2d 428, 444 (2000). There, the court examined whether it was permissible for a police officer to testify as a lay witness that the defendant "looked guilty" because he exited the scene of a murder "holding his hands in the air." On appeal, the defendant argued that the testimony was unfairly prejudicial, speculative, and beyond the scope of a permissible lay opinion. The court first examined whether the testimony was excludable under North Carolina's Rule 403, equivalent to CRE 403. The court determined that the testimony was admissible because it was relevant "to negate defendant's claim of self-defense as well as to

establish his state of mind and intent to kill" and was not unfairly prejudicial. *Id.* at 444–45.

¶ 42 Next, the court considered whether the testimony was an appropriate lay opinion under North Carolina's equivalent to CRE 701. Similar to Colorado law, the court first noted that the rule "permits evidence which can be characterized as a 'shorthand statement of fact.'" *Id.* at 445. The court described these statements as the "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons ... derived from observation of a variety of facts presented to the senses at one and the same time." *Id.* (internal quotation marks omitted). The court ultimately concluded that the officer's testimony that the defendant "looked guilty" was "based on his observation that, as defendant saw [the officer] approaching, defendant immediately raised his hands," and was therefore an admissible shorthand statement of fact. *Id.*

¶ 43 Unpublished cases from other jurisdictions support admission of such testimony when it is based on the personal observations of the witness. *People v. Meza*, No. C067992, 2012 WL 2924540, at *4 n. 2 (Cal. Ct.App. July 19, 2012) (unpublished opinion) (witness's testimony that his brother looked guilty or that he "saw guilt" in his brother's eyes was not objectionable as improper opinion testimony because the witness "essentially described defendant's behavior as being consistent with guilt"); *People v. Hardy*, No. 309405, 2014 WL 716145, at *3 (Mich.Ct.App. Feb. 25, 2014) (unpublished opinion) (holding that it was permissible lay opinion for a police officer to testify that "my impression was [the defendant] felt guilty"); *People v. Jackson*, No. 304163, 2013 WL 276054, at *2 (Mich.Ct.App. Jan. 24, 2013) (unpublished opinion) (holding that witness's opinion that the defendant appeared to be guilty was proper lay opinion testimony because it was rationally based on the witness's perceptions of the defendant).

¶ 44 Cases that have excluded similar testimony provide no analysis or reason for the exclusion. *See United States v. Fabel*, No. CR06–041L, 2007 WL 313934, at *2

(W.D.Wash. Jan. 30, 2007) (stating without analysis, in order on motion to suppress, that witness could testify about the defendant's physical responses but could not testify that he "looked guilty" or "appeared defensive"); *State v. Yarber*, 102 Ohio App.3d 185, 656 N.E.2d 1322, 1326–27 (1995) (trial court sustained objection to testimony that "He looked guilty to me," stating that the witness could describe the defendant's appearance, demeanor, and things of that nature; appellate court held on appeal that the precluded statements were inadmissible hearsay); *State v. Baldwin*, 36 Kan. 1, 12 P. 318, 326 (1886) (holding without analysis that trial court properly precluded a lay witness from answering whether, in his opinion, the defendant had the appearance of being a guilty man, and then striking from the record the witness's later voluntary statement that the defendant looked guilty). Because these cases lack analysis and do not analyze the issue under evidentiary rules similar to CRE 701, we can glean no guidance from them and, thus, do not find them persuasive.

¶ 45 Here, we conclude that the statement was a proper, admissible lay opinion under CRE 701. J.H. was physically present at the party where the assault occurred, and she was in the tattoo room when defendant entered immediately after the incident. Although her relationship with defendant is somewhat unclear, she testified that she worked with defendant and the party was one of the first times they had spent time together outside of work. Defendant even testified that they were friends at that time. J.H. was only present at the party because defendant invited her, and she and defendant left the party together.

¶ 46 Thus, J.H. personally observed defendant and had a rational basis for forming an opinion as to how he appeared to her at the time of the incident. *See Russell*, ¶ 19; CRE 701. J.H.'s statement was her summary characterization of how she perceived defendant looked and acted immediately following the incident and did not consist of a statement that she personally believed the crime had occurred or that she thought defendant was guilty. *See Farley*, 712 P.2d at 1118 (lay witness opinion testimony is admissible when it is based on the witness's personal observation and does not consist of a statement that the witness believed the victim or believed that the crime occurred).

¶ 47 J.H. demonstrated obvious difficulty in factually describing to the jury what she had seen, and the record indicates that her overall impression was therefore helpful for the jury to understand her testimony. *See Rubanowitz*, 673 P.2d at 47 (lay witness opinion testimony is helpful when it provides the jury with the witness's overall impression and brings the particulars into focus).

¶ 48 In addition, the facts here are very similar to the facts in *Braxton*, 531 S.E.2d at 444. There, a police officer had testified that he searched the defendant because he "looked guilty." The *Braxton* court held that the officer's statement was a proper lay opinion because it was based on the officer's personal observations of the defendant, and the testimony was not unduly prejudicial.

¶ 49 The testimony by J.H. describing defendant as "very guilty-looking" falls even more obviously within the purview of a lay witness opinion. J.H. was defendant's friend, with no background or experience dealing with criminal activity. The prosecutor's question to her called for a factual response, and her answer was not intended to give a legal conclusion. She compared how she saw defendant acting to a dog or a small child who had done something wrong. J.H. also clarified her response by describing, as best she could, the particular behavior that led to her conclusion.

¶ 50 Our view is supported by Colorado cases in which lay opinion testimony has been given concerning various other aspects of behavior, demeanor, state of mind, motivation, intent, and physical characteristics. *See, e.g., People v. Souva*, 141 P.3d 845, 849–51 (Colo.App.2005) (holding that lay witness could testify that she thought the defendant was "clean" (meaning not on drugs), because it was based on her personal observations and experience); *People v. Hoskay*, 87 P.3d 194, 196–97 (Colo.App.2003) (lay witness testified that defendant was "startled" when caught in the act of sexual assault; witness could properly opine that sexual encounter appeared to be nonconsensual); *People v.*

*Hulsing,* 825 P.2d 1027, 1032 (Colo.App.1991) (holding it was proper under CRE 803(2) for witnesses to testify that the victim was "in a turmoil," "very nervous," "almost too calm," and "awfully upset" following incidents with defendant; further proper to testify that one child was "dazed," "very upset," "very frightened," "almost on the verge of going into shock," and that another child was "bouncing off the walls" and "pretty wound up"); *see also Farley,* 712 P.2d at 1119 ("When ... a witness has personally observed the physical activity of another, and summarizes his 'sensory impressions thereof,' the witness'[s] conclusions are admissible.").

¶ 51 Cases outside Colorado have also permitted admission of such evidence. *See, e.g., United States v. Mastberg,* 503 F.2d 465, 470 (1st Cir.1974) ("[U]nder the modern, and probably majority, view a lay witness may state his opinion that a person appeared nervous or intoxicated."); *McKinney v. Commonwealth,* 60 S.W.3d 499, 503–04 (Ky.2001) (witness permissibly testified that the defendant "seemed calm," "acted normal," "did not seem concerned," and was "non-emotional"); *State v. Lonergan,* 505 N.W.2d 349, 355 (Minn.Ct.App.1993) (admission of testimony that the victim "looked frightened, embarrassed, and ashamed" was within the trial court's discretion); *Chaupette v. State,* 136 So.3d 1041, 1047 (Miss.2014) (holding it was proper for a witness to testify that a child victim "appeared fearful and embarrassed" when discussing child abuse); *State v. Kelly,* 118 N.C.App. 589, 456 S.E.2d 861, 866, 868 (1995) ("[t]he state of a person's health, the emotions he displayed on a given occasion, or other aspects of his physical appearance are proper subjects for lay opinion" and "testimony that a child seemed embarrassed, frightened or displayed other emotions is indeed appropriate" (internal quotation marks omitted)); *City of Seattle v. Heatley,* 70 Wash.App. 573, 854 P.2d 658, 660–63 (1993) (permissible lay opinion for a police officer to testify that defendant was "obviously intoxicated" and "affected by the alcoholic drink" and that he "could not drive a motor vehicle in a safe manner" because it was based on his personal observations of defendant's physical activity); *State v. Olsen,* 157 Wis.2d 263, 459 N.W.2d 260, 1990 WL 118259, \*4 (Wis.Ct.App.1990) (unpublished opinion) (permitting father to testify that the defendant "looked ashamed" as lay opinion); *but see Fabel,* 2007 WL 313934, at \*2 (stating, in order on motion to suppress, that witness could testify about defendant's physical responses but could not testify that he "looked guilty" or "appeared defensive").

¶ 52 Like the statements in this line of cases, J.H.'s testimony summarized her impression of defendant's demeanor and state of mind, based on her rational perception and personal observations of defendant.

### 2. Ultimate Issue

¶ 53 We further conclude that the evidence did not violate CRE 704. Although J.H. used the word "guilty," she clearly was not opining on whether defendant was, in fact, legally guilty.

¶ 54 Furthermore, the prosecutor's question was phrased to elicit a factual rather than a "legal" response, and J.H.'s statement did not assert that a particular legal standard had been met. *Collins,* 730 P.2d at 305; *Beilke,* 232 P.3d at 152.

### 3. Relevance and Prejudice

¶ 55 We also conclude that the evidence was relevant under CRE 401 and was not unduly prejudicial under CRE 403.

¶ 56 "All relevant evidence is admissible unless prohibited by constitution, statute, or court rule." *People v. Cardenas,* 2014 COA 35, ¶ 51, 338 P.3d 430 (citing CRE ·402). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401; *Cardenas,* ¶ 51.

¶ 57 But "relevant[ ] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403; *Cardenas,* ¶ 52. "All effective evidence is prejudicial in the sense that it is damaging to the party against whom it is being offered." *Cardenas,* ¶ 52 (internal quotation marks omitted). Thus, evidence is only excludable under CRE 403 if

it has "some undue tendency to suggest a decision on an improper basis, commonly an emotional basis, such as bias, sympathy, hatred, contempt, retribution, or horror." *Id.* (internal quotation marks omitted).

¶ 58 "In reviewing whether evidence should have been excluded under CRE 403, we must assume the maximum probative value that a reasonable factfinder might give to the evidence and the minimum unfair prejudice that might reasonably be expected." *Id.* (internal quotation marks omitted).

¶ 59 Here, the evidence was relevant because it tended to prove defendant committed the charged act. *See People v. Lowe,* 660 P.2d 1261, 1264 (Colo.1983) (consciousness of guilt that tends to incriminate a defendant charged with a crime is relevant; "under the rubric 'consciousness of guilt,' evidence of a party's behavior is relevant to show, through a series of reasonable inferences, that the accused committed the crime charged"), *overruled in part on other grounds by Callis v. People,* 692 P.2d 1045 (Colo.1984). It is further relevant to show that he acted knowingly in doing so. *See Salcedo v. People,* 999 P.2d 833, 840 (Colo.2000) (a defendant's actions, demeanor, or appearance at the time of the crime generally is relevant to the defendant's state of mind); *People v. Ortega,* 162 Colo. 358, 364, 426 P.2d 180, 183 (1967) (a "defendant's conduct at the time of arrest may properly be shown as a circumstance tending to show consciousness of guilt"), *superseded by rule as stated in People v. Dist. Court,* 172 Colo. 23, 469 P.2d 732 (1970); *Jordan v. People,* 151 Colo. 133, 136, 376 P.2d 699, 701 (1962) (the defendant's conduct leading to his arrest was properly admitted for the purposes of determining whether such conduct tended to show his consciousness of guilt); *People v. Kyle,* 111 P.3d 491, 499 (Colo.App.2004) ("[e]vidence of a defendant's behavior ... may be admissible to show that the defendant was conscious of guilt and, by further inference, committed the crime charged"); *see also People v. Medina,* 51 P.3d 1006, 1012–13 (Colo.App.2001) (uncharged misconduct may be admitted under CRE 404(b) to show the absence of mistake or accident or to show consciousness of guilt), *aff'd,* 71 P.3d 973 (Colo.2003); 23

West's Colorado Practice Series § 402:2 (2013) ("[C]onduct that is inconsistent with a party's position at trial will usually be relevant to rebut the position taken by that party. Likewise, conduct that implies consciousness of guilt ... will ordinarily be relevant to rebut the party's claim at trial of innocence." (footnote omitted)).

¶ 60 In our view, the term "guilty-looking," as in the witness's opinion in this case, relates to consciousness of guilt, and is therefore relevant. The term signifies a range of behavior that ordinary persons would understand and associate with consciousness of guilt. Jurors would, in our view, have common experiences in everyday life that would inform their understanding of the term, such as the look of children when caught violating some parental rule or a person of any age who has just been caught doing something wrong, such as lying. And we need not define all behavior that leads to a reasonable conclusion that a person is conscious of guilt. It is enough, in our view, that the witness here identified behavior that tends to create an inference of consciousness of guilt.

¶ 61 Further, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice because it does not tend to suggest a decision on an improper basis, such as bias, sympathy, hatred, contempt, retribution, or horror. *Cardenas,* ¶ 52.

¶ 62 Courts considering the admissibility of lay opinion testimony on demeanor and state of mind, such as the testimony here, have concluded that such opinions are not excludable under the unfair prejudice test of CRE 403. *See Collins,* 730 P.2d at 307 (lay witness opinion testimony on necessity of using a weapon during a fight did not violate CRE 403); *Farley,* 712 P.2d at 1119–20 (lay witness opinion testimony on victim's state of mind did not violate CRE 403). The North Carolina court in *Braxton,* 531 S.E.2d at 444–45, when faced with facts similar to those here, likewise concluded that testimony that the defendant "looked guilty" was not unduly prejudicial.

¶ 63 This case is distinguishable from *Domingo–Gomez v. People,* 125 P.3d 1043,

1048–50 (Colo.2005), in which the supreme court held that a prosecutor's remarks during closing argument that defendant and his witnesses had lied, testified untruthfully, made up their stories, and that the case went through a "screening process" prior to the filing of charges, were improper statements of personal opinion.

¶ 64 The witness here was not giving her personal opinion that defendant was guilty. The witness stated that defendant was "guilty-looking," making it clear that she was merely expressing her personal opinion of how defendant appeared to her at the time she observed his physical behavior. In addition, *Domingo–Gomez* prohibits the prosecutor, a person who is likely to have significant credibility with the jury, from arguing his or her personal belief to the jury, a practice that is prohibited not only by case law, but also rules of professional conduct. *See id.* As we have stated above, a lay witness is permitted to state his or her personal opinion if it is based on a rational perception and personal observations, and here, the prosecutor only stated in closing argument that J.H. had remarked that defendant looked guilty. The prosecutor did not use her testimony to explicitly say "she thought he was guilty" or "based on her testimony, I believe he is guilty." No belief in guilt was ever expressed.

¶ 65 This case is also distinguishable from *Salcedo,* 999 P.2d at 836–37. There, the court addressed the admissibility of "drug courier profile" evidence offered by an expert witness to rebut the defendant's contention that he was unaware that a suitcase he was transporting contained cocaine. In the trial court, the prosecution had qualified a detective as an expert in the area of "narcotics interviews," who testified about the behaviors and characteristics that constituted his profile of a drug courier. The expert further testified to aspects of the defendant's behavior and appearance that conformed to the profile, and then opined that the defendant knew the suitcase contained cocaine because his actions conformed to the expert's previously-established profile.

¶ 66 On appeal, the court noted that such "profiles" typically are "informal, unwritten, and ill-defined compilations of behavior and characteristics that detectives believe are typical of drug couriers." *Id.* at 838. When analyzing whether the testimony was properly admitted expert testimony under the standards of CRE 702, the court held that the lack of evidence indicating that the expert employed an objective, widely-recognized profile seriously undermined the likelihood that his testimony and opinions would assist the jury to determine the defendant's state of mind at the time of his arrest. *Id.* at 839. It also stated that the lack of evidence in the record indicating that conformity to the drug courier profile was a reliable indicator of guilt rendered the testimony irrelevant and improper expert testimony. *Id.* at 839–40. Consequently, the court reversed the conviction.

¶ 67 In doing so, however, the court was at pains to note that:

> [This] holding in no way limits the admissibility of relevant evidence of a defendant's own behavior and characteristics. Evidence of a defendant's actions, demeanor, or appearance at the time he allegedly committed a crime generally is relevant to the defendant's state of mind. Evidence of the behavior and characteristics of previously observed drug couriers is not.

*Id.* at 840.

¶ 68 Here, J.H. used the term "guilty-looking" in her testimony to describe defendant's behavior, demeanor, and appearance shortly after the incident, explaining that it was similar to that of a small child who has been caught doing something wrong. J.H.'s testimony was therefore unlike the testimony precluded in *Salcedo.* She testified as a lay witness rather than a qualified expert, and she never expressed a personal opinion that defendant was in fact guilty of the crime or that his behaviors fit a profile or pattern typical of a person who has just been caught sexually assaulting a child. She did not attempt to compare or equate defendant's behavior to that of previously observed sex offenders but instead provided testimony of her personal observations and sensory impressions that were relevant to defendant's state of mind and consciousness of guilt. *See Lowe,* 660 P.2d at 1264.

### 4. Testimony on Truthfulness

¶ 69 We reject defendant's contention that the evidence violates CRE 608.

■■■ ¶ 70 Under CRE 608(a), a witness may give opinion or reputation evidence concerning the character of another witness for truthfulness or untruthfulness, but only after the witness's character for truthfulness has been attacked.

¶ 71 A party may not use extrinsic evidence to prove specific instances of conduct concerning a witness's character for truthfulness. CRE 608(b); *People v. Wittrein,* 221 P.3d 1076, 1081 (Colo.2009) ("In Colorado, neither lay nor expert witnesses may give opinion testimony that another witness was telling the truth on a specific occasion."); *see also People v. Eppens,* 979 P.2d 14, 17–19 (Colo.1999) (it was error, although not plain error, for a social worker to testify that the child victim "was sincere" when reporting assault).

¶ 72 Here, the evidence was not a direct or even indirect comment on defendant's character for truthfulness or untruthfulness, nor was it a comment on his truthfulness on a particular occasion. *See Wittrein,* 221 P.3d at 1081; *Eppens,* 979 P.2d at 17–19.

### 5. Abuse of Discretion

¶ 73 " 'To say that a court has discretion in resolving [an] issue means that it has the power to choose between two or more courses of action and is therefore not bound in all cases to select one over the other.' " *People v. Crow,* 789 P.2d 1104, 1106 (Colo. 1990) (quoting *People v. Milton,* 732 P.2d 1199, 1207 (Colo.1987)). Under this deferential standard of review, and given the difficulty that J.H. had in describing defendant's behavior and physical characteristics in response to the accusations by C.C.'s father, we conclude that the trial court did not abuse its discretion by allowing the challenged testimony. *See Collins,* 730 P.2d at 305–07; *Beilke,* 232 P.3d at 152–53.

### IV. Victim Reaction Testimony

■■■ ¶ 74 Defendant asserts that the trial court erred by allowing C.L.'s father to testify that C.L. had attended a support group after the assault and had told him that thinking about the incident made her feel sick to her stomach. Specifically, he asserts that this testimony violated his rights to due process and confrontation and CRE 401–403 and CRE 802. He also contends that the trial court improperly acted as an advocate by advising the prosecutor how to admit this testimony. We disagree.

### A. Preservation and Standard of Review

■■■ ¶ 75 "Evidentiary rulings are reviewed for an abuse of discretion, meaning they are reversible only if they are manifestly arbitrary, unreasonable, or unfair." *People v. Shifrin,* 2014 COA 14, ¶ 52, —— P.3d —— (internal quotation marks omitted). We review errors for which the defendant lodged a contemporaneous objection for harmless error. *Davis v. People,* 2013 CO 57, ¶ 13, 310 P.3d 58. "Under this standard, when the error is not of constitutional dimension, we will disregard it as harmless if there is no reasonable probability that it contributed to the defendant's conviction." *People v. Herdman,* 2012 COA 89, ¶ 16, 310 P.3d 170.

■■■ ¶ 76 However, "[a]n issue is unpreserved for review when, among other things, (1) no objection or request was made in the trial court; or (2) an objection or request was made in the trial court, but on grounds different from those raised on appeal." *People v. Ujaama,* 2012 COA 36, ¶ 37, 302 P.3d 296 (citations omitted); *see People v. Rogers,* 2012 COA 192, ¶ 24, 317 P.3d 1280 ("An issue is unpreserved for review when an objection or request was made to the trial court, but on different grounds than those raised on appeal.").

■■■ ¶ 77 When a defendant has objected to the admission of evidence at trial on grounds different from those argued on appeal, we review for plain error. *Ujaama,* ¶ 37; *Rogers,* ¶ 25. "Plain error addresses error that is obvious and substantial and that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Herdman,* ¶ 16.

¶ 78 Defendant lodged objections both before and during trial to the father's testimony regarding the victim's reactions, arguing that the testimony was irrelevant and that he could not effectively cross-examine on the topic without receiving discovery concerning the support group. Thus, we will review his due process, confrontation, and CRE 401–403 arguments for an abuse of discretion and harmlessness.

¶ 79 Because defendant did not contemporaneously argue that the trial court improperly instructed the prosecution or that the testimony was inadmissible hearsay, we will review these contentions for an abuse of discretion and plain error.

### B. Testimony and Court's Ruling

¶ 80 During the father's testimony, the prosecutor asked, "Did you ever ask [C.L.] how thinking about the incident made her feel?" C.L.'s father responded, "Oh, when we were coming back from one of the support things ... we asked her how it made her feel thinking about it, and she said it made her sick to her stomach." The court ruled that this testimony was admissible.

### C. Hearsay—Law and Application

¶ 81 "Hearsay" is defined as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Generally, hearsay is inadmissible under CRE 802.

¶ 82 "The primary basis for excluding hearsay evidence is the lack of opportunity to subject the declarant to cross-examination." *People v. Madson,* 638 P.2d 18, 27 (Colo.1981). Where a witness testifies at trial and is therefore subject to cross-examination, admission of the witness's prior out-of-court statements does not violate a defendant's Confrontation Clause rights. *Ujaama,* ¶ 45; *People v. Argomaniz–Ramirez,* 102 P.3d 1015, 1018 (Colo.2004).

¶ 83 CRE 803(3) provides an exception to the general preclusion of hearsay evidence for a "then existing mental, emotional, or physical condition." The rule provides for admission of "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed."

¶ 84 Under CRE 803(3), hearsay statements concerning the declarant's state of mind are relevant and admissible under CRE 401–403 if the victim's state of mind is at issue. *Madson,* 638 P.2d at 28–29; *People v. Borrelli,* 624 P.2d 900, 903 (Colo.App.1980) (where the state of mind of the victim is clearly relevant to a material issue in the case, hearsay statements are admissible under CRE 803(3) unless their probative value is substantially outweighed by the danger of unfair prejudice).

¶ 85 In *People v. Haymaker,* 716 P.2d 110, 113–14 (Colo.1986), the supreme court held that testimony by the victim's mother that the victim was fearful and distraught for several months after the assault was admissible under CRE 803(3) because the statement involved the victim's state of mind; it was relevant because it substantiated the victim's credibility on the issue of whether she consented to a sexual encounter with the defendant; and it was not so inflammatory or repetitive as to be unduly prejudicial. *See also Pena v. People,* 173 P.3d 1107, 1112 (Colo.2007) (victim's statements to a police officer describing physical injuries resulting from a sexual assault were admissible under CRE 803(3)); *People v. Phillips,* 2012 COA 176, ¶ 119, 315 P.3d 136 (victim's statement that his ears hurt in response to direct questioning by a teacher's aide was admissible as a then-existing physical condition under CRE 803(3)); *People v. Robles,* 302 P.3d 269, 277–78 (Colo.App.2011) (victim's statement to a police officer that she was afraid of the defendant and feared that he might kill her was admissible under CRE 803(3) to show the victim's state of mind and was relevant as to whether she consented to a sexual encounter with him).

¶ 86 Here, we first reject defendant's argument that the testimony violated his right to confrontation. Defendant knew about the potential use of the statement before trial, and C.L. testified at trial and was thus sub-

ject to cross-examination concerning it. *See Ujaama*, ¶ 45; *Argomaniz–Ramirez*, 102 P.3d at 1018. The testimony linked the origin of the statement to the assault and not to the support group sessions; hence, defendant was able to effectively cross-examine on the statement without access to records from the support group.

¶ 87 Defendant asserts that the statement was inadmissible hearsay under CRE 803(3) because it was not spontaneous, but was made in response to a specific question from her father; it was not a report of then-existing nausea; and it included an assertion of the cause of the condition. We are not persuaded.

¶ 88 Hearsay statements are not inadmissible under CRE 803(3) simply because they are made in response to direct questioning. *See Phillips*, ¶¶ 6, 119. Nor is a statement inadmissible under CRE 803(3) because it references the cause of the condition. *See Pena*, 173 P.3d at 1112 (victim's hearsay statements that her wrists were sore from being held down during a sexual assault were admissible under 803(3)). Thus, the testimony was admissible because it established that C.L.'s state of mind or physical condition was the result of thinking about the incident.

¶ 89 Finally, we are unpersuaded by defendant's argument that C.L.'s hearsay statement was not a report of then-existing nausea. Regardless of how C.L.'s father phrased his testimony at trial, it only makes logical sense that at the time C.L. made the statement, both she and her father would have been speaking in the present tense.

¶ 90 Defendant's theory of the case was that C.L. fabricated the assault. During C.L.'s testimony, defendant's counsel cross-examined her on her inability to remember various details of the assault or defendant himself, and he emphasized this theory in closing argument. Defendant thus put C.L.'s credibility and state of mind directly in issue, and the hearsay statement was relevant to substantiate her credibility on whether she was assaulted. *See Madson*, 638 P.2d at 28–29; *Borrelli*, 624 P.2d at 903. And the testimony was not so inflammatory as to be unduly prejudicial. *Haymaker*, 716 P.2d at 113–14.

¶ 91 We conclude that the trial court did not err, let alone plainly err, by allowing the testimony under CRE 803(3).

D. Judicial Bias—Law and Application

▮▮▮▮▮ ¶ 92 "A trial judge must be free of any bias, prejudice, or interest directed toward any party or witness, and must avoid making rude comments or entering into discussions showing irritation in the presence of the jury." *People v. Rodriguez*, 209 P.3d 1151, 1162 (Colo.App.2008); *see also People v. Coria*, 937 P.2d 386, 391 (Colo.1997) ("Courts must meticulously avoid any appearance of partiality, not merely to secure the confidence of the litigants immediately involved, but to retain public respect and secure willing and ready obedience to their judgments." (internal quotation marks omitted)); *People v. Martinez*, 185 Colo. 187, 189, 523 P.2d 120, 121 (1974) ("The role of the judiciary, if its integrity is to be maintained, is one of impartiality."). While a trial judge has wide discretion in conducting a trial, he or she must exercise restraint to maintain an impartial forum. *Rodriguez*, 209 P.3d at 1162.

▮▮▮▮▮ ¶ 93 To constitute a deprivation of a fair trial, a trial judge's comments in front of a jury must cause prejudice to the defendant. *Id.*

> Casual remarks by the trial court while passing on objections to testimony do not constitute reversible error unless they reflect adversely upon the defendant or upon the issue of his or her guilt or innocence.... With respect to comments, questions, and ultimately, even a judge's demeanor, more than mere speculation concerning the possibility of prejudice must be demonstrated to warrant a reversal; the record must clearly establish bias. The test is whether the trial judge's conduct so departed from the required impartiality as to deny the defendant a fair trial.

*Id.*

¶ 94 In *Martinez*, 185 Colo. at 189, 523 P.2d at 121, the supreme court determined that it was inappropriate for a trial judge to assume the role of an absent district attorney

at a pretrial suppression hearing. The judge had moved sua sponte for the admission of certain evidence, called witnesses for the prosecution, examined the witnesses, and cross-examined defense witnesses. *Id.* In granting the defendant a new hearing based on the impropriety, the supreme court stated that "[t]hese are the acts of an advocate and not a judge." *Id.*

¶ 95 Defendant argues that admission of the testimony violated the trial court's prior orders and his right to an impartial judge when the court advised the prosecutor how the testimony might be admitted without providing discovery about the support group to defendant. We disagree.

¶ 96 Defendant's counsel repeatedly objected to this testimony by C.L.'s father unless defendant received records from the support group sessions. Before trial, defendant's counsel argued that he could not effectively cross-examine C.L.'s father without information on what had happened in the sessions to determine what had caused C.L. to feel sick. Through a series of objections and argument, the trial court ruled that C.L.'s father could testify regarding the effect of the incident on C.L. if the prosecutor could establish precisely what caused C.L. to have a particular reaction. The court further ruled that, if the witness tied C.L.'s reaction directly to the support group session, the prosecutor would need to provide further information on the session to defendant, or the testimony would be inadmissible.

¶ 97 We first conclude that the testimony did not violate the trial court's order concerning this evidence. The court ruled that the evidence was admissible if the father linked C.L.'s reaction directly to the incident, and was inadmissible without further discovery if C.L.'s reaction was caused by the support group session. The prosecutor's question asked how thinking about *the incident* made C.L. feel, and the father responded that thinking about "it" made her feel sick. When read together, the prosecutor's question and the father's response tied C.L.'s reaction directly to thinking about the assault, and did not indicate that the support

group session was the direct cause of her reaction.

¶ 98 We next conclude that the trial court's statements and rulings on this evidentiary issue did not demonstrate any bias on the court's part, nor did the court overstep the boundaries of its position as a neutral judge. Unlike the judge in *Martinez*, the trial judge here did not act as an advocate. The court did not call witnesses, ask questions of any witnesses, or otherwise advocate for the testimony being admitted or excluded.

¶ 99 Further, defendant does not argue, and the record does not reflect, that the court harassed or embarrassed counsel for either party, or that the court was rude to counsel for either party. The court's rulings were made outside the presence of the jury, and consisted of a neutral commentary on the admissibility or inadmissibility of the challenged evidence. Indeed, it sustained defense counsel's objection to testimony when further foundation was needed before the evidence could be admitted. Defendant has not shown, and the record does not support, any clear bias on the part of the trial judge. *Rodriguez*, 209 P.3d at 1162.

¶ 100 Hence, we perceive no error, let alone plain error.

### V. Conclusion

¶ 101 The judgment is affirmed.

JUDGE DAILEY concurs.

JUDGE BERGER concurs in part and dissents in part.

JUDGE BERGER concurring in part and dissenting in part.

¶ 102 At the jury trial in this very serious criminal case, the trial court permitted a witness to testify, over defendant's objection, that defendant was "very guilty-looking" immediately after the commission of the crime alleged.[1] Yet, the witness could not even articulate the behavior that led to this characterization. In my view, a court should *never* admit testimony by a witness that a

---

1. Defendant objected twice to this evidence, first, in a motion in limine which the trial court denied and, second, during the presentation of the evidence before the jury.

defendant was "very guilty-looking."[2] Such testimony is irrelevant, inadmissible under CRE 701, unfairly prejudicial, and may render unreliable criminal convictions in which such evidence has been admitted. The error in the admission of this evidence was not harmless and requires the reversal of defendant's conviction and a new trial. Accordingly, I respectfully dissent from Part III of the majority opinion.[3]

## I. "Very Guilty–Looking" Testimony

### A. Relevance—CRE 401

¶ 103 The threshold inquiry for all evidence is relevance. CRE 402. Evidence that is relevant generally is admissible. *Id.* Irrelevant evidence is always inadmissible, unless no objection is made to it. *Id.* Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Some types of evidence are so obviously relevant that no further inquiry or showing is required as a condition of admissibility. For example, eyewitness testimony regarding the commission of a crime or a voluntary confession to a crime by a defendant is so obviously relevant that no showing need be made to admit such evidence. But the relevance of other types of evidence is not so obvious and may depend upon the validity of intermediate propositions; in other words, some evidence may be relevant only if certain propositions underlying the evidence are valid. Such is the case here.

¶ 104 Opinion evidence by a witness that a defendant was "very guilty-looking" would be relevant only if there were a commonly accepted definition of the matrix of human expressions, body language, and actions that demonstrate guilt. This definition, or understanding, may be supplied by the law, by common experience, or perhaps by social science. Without such a common understanding, the opinion by the witness that defendant looked guilty has no probative value whatsoever.

¶ 105 I simply do not know what it means to be "very guilty-looking," and the record in this case is devoid of any information upon which the trial court or this court could determine that a common understanding or definition of what it means exists.[4] The witness struggled to explain what she meant by the term "very guilty-looking"; that defendant's "hands were behind his back," "he was looking down and looking up," and "he looked like a little kid or a dog would ... [w]hen they have done something wrong" was the extent of her explanation. And importantly, the prosecution did not introduce any evidence that these behaviors are commonly understood indications of guilt.

¶ 106 In *Salcedo v. People,* the Colorado Supreme Court held that testimony by an " 'expert in the area of narcotics interviews' " that the defendant's behavior and characteristics conformed to the profile of a drug courier was inadmissible as substantive evidence of guilt. 999 P.2d 833, 836–37 (Colo. 2000). The supreme court explained that "the prosecution offered no foundational evidence that a defendant's conformity to [the expert's] drug courier profile is a reliable indication of a person's guilt," especially because "[t]he behaviors and characteristics in [the expert's] drug courier profile are not unique to drug smugglers." *Id.* at 839. "Indeed, our review of cases addressing use of drug courier profiles indicates that ... few if any [air travel] passengers are entirely above suspicion. Drug courier profiles are broad in their sweep and sometimes appear depen-

---

2. In my view, the admission of such testimony always constitutes error. Whether the erroneous admission of such testimony requires a new trial depends upon application of the harmless error rule (when a contemporaneous objection is made) or the plain error rule (when no contemporaneous objection is made).

3. As discussed below, I also respectfully dissent from Part IV of the majority opinion. However, I agree with the majority that the trial court did

not err by refusing to sanction the prosecution for the discovery violation, and accordingly I join Part II of its opinion.

4. The rules of evidence do not apply to preliminary questions concerning the admissibility of evidence except those with respect to privileges. CRE 104(1). However, the record still must reflect the information used by the trial court in making a determination of admissibility.

dent on seemingly contradictory behaviors and characteristics." *Id.*

¶ 107 The supreme court concluded that, due to "[t]he lack of evidence in the record indicating that conformity to [the expert's] drug courier profile is a reliable indicator of guilt," the expert's testimony was irrelevant: that drug couriers displayed certain commonplace behaviors and characteristics did not make it more probable that a person displaying those behaviors and characteristics was a drug courier. *Id.* at 839–40.

¶ 108 I believe a similar analysis applies here. There may be some actions under some circumstances that some people might construe to mean that the person at issue was "very guilty-looking," but I am aware of nothing in the law, in social science, or in common experience that creates anything even close to a consensus as to when certain actions, expressions, or body language make a person "very guilty-looking." Moreover, to the extent that there might be any such common understanding, it almost certainly varies by culture.

¶ 109 Given the explosive nature of such testimony—after all, the whole purpose of a criminal trial is to determine whether the defendant is guilty or not guilty—a court should not permit a jury to hear such testimony unless it has some degree of confidence that this type of evidence is based on a generally accepted understanding of what a "very guilty-looking" person looks like. Reducing the complex of factors that may be characteristic of "very guilty-looking" persons to what a little kid or a dog looks like when it realizes it has done something wrong is insufficient to support the admission of such explosive evidence in a criminal trial. Even assuming that there is a common understanding regarding what characteristics children or dogs exhibit after they have been discovered misbehaving, there could be many reasons an adult might display some of these characteristics that have nothing to do with criminal guilt.

¶ 110 Without some showing by the prosecution that the behavior described by the witness is more likely to manifest in those who have committed criminal acts than those who have not, I cannot agree with the major-

ity that the witness's description of defendant's behavior formed a proper basis for testimony that defendant was "very guilty-looking." *Cf. id.* at 840 ("We conclude that before drug courier profile evidence can be considered logically relevant to whether a person conforming to the profile is a drug courier, the prosecution must demonstrate that the behavior and characteristics that constitute the profile are relatively unique to drug couriers. The prosecution made no such demonstration in this case.").

¶ 111 Accordingly, I conclude that, at least in the context of evidence admitted against a defendant during a criminal trial, a witness's lay testimony that the defendant was "very guilty-looking" does not have any tendency to make it more probable that the defendant committed the criminal act at issue and therefore is not relevant under CRE 401.

### B. Lay Opinion—CRE 701

¶ 112 In addition to the testimony's lack of relevance under CRE 401, I disagree with the majority that the testimony was properly admitted under CRE 701. For a variety of reasons, primarily based upon considerations of reliability and relevance, lay witnesses at common law were prohibited from testifying as to opinions. Only expert witnesses could testify as to opinions. This common law rule has been codified, with some exceptions, in CRE 701. Under limited circumstances, a lay witness may express an opinion that is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.* Testimony that a defendant was "very guilty-looking" does not meet the requirements of CRE 701 that the opinion be "rational" *and* "helpful to a clear understanding of the witness'[s] testimony."

¶ 113 Such testimony is rational only if there is some common, accepted, and generally accurate understanding of the human activities that make someone "very guilty-looking." As discussed above, the record is devoid of such evidence. And such testimony

is not helpful because, as previously mentioned, the term "very guilty-looking" has no established meaning. A person who is very guilty-looking to one person may be viewed by another observer as being depressed, sad, or uncomprehending. Consequently, the witness's testimony here that defendant was "very guilty-looking" did not provide any useful information to the jury regarding her perception of defendant's demeanor after the alleged assault.

### C. Unfair Prejudice—CRE 403

¶ 114 Even if I were to believe that the witness's opinion was "rational" and "helpful" as required by CRE 701, the testimony still should have been excluded under CRE 403 because its probative value (which I consider to be either nonexistent or extremely minimal) was far outweighed by its prejudicial impact. The probative value of the evidence was minimal precisely because of what I discussed above: There is no common understanding as to the complex of factors that makes one "very guilty-looking." The prejudicial impact is obvious under the facts of this case: A witness identified with defendant (and particularly a witness who might be expected to "side" with defendant) told the jury that she thought he was "very guilty-looking." Contrary to the majority's analysis, the leap from a defendant being "very guilty-looking" immediately after the commission of the alleged crime to a determination of legal guilt is but a short jump.

### D. Case Law

¶ 115 In a different, but somewhat analogous context, the Colorado Supreme Court has instructed us that counsel may not argue to a jury that a witness is a liar, no matter how strong the evidence may be of untruthfulness. *Domingo–Gomez v. People,* 125 P.3d 1043 (Colo.2005). The rationale for the supreme court's holding was that

> [s]ome words or analogies by their very nature resonate more powerfully in the heart and minds of the jury. They evoke

strong reactions in jurors and take them down the path towards a conviction where the evidence does not necessarily lead. The word 'lie' is such a strong expression that it necessarily reflects the personal opinion of the speaker. When spoken by the State's representative in the courtroom, the word 'lie' has the dangerous potential of swaying the jury from their duty to determine the accused's guilt or innocence on the evidence properly presented at trial. Thus, it is improper for a lawyer to assert his opinion that a witness is lying. He can argue to the jury that they should not believe a witness, but he should not call him a liar.

*Id.* at 1050 (citation, internal quotation marks, and alterations omitted). If counsel cannot argue that a witness is a "liar" or has "lied" in a criminal case, it is difficult for me to imagine that the admission of the much more damning testimony that was admitted in this case would be permissible.

¶ 116 Each of the Colorado cases relied upon by the majority to reach the conclusion that the testimony was properly admitted under CRE 701 is clearly distinguishable.[5] In *Elliott v. People,* the challenged testimony was that the defendant "was getting ready to hit the owner of the store." 176 Colo. 373, 377, 490 P.2d 687, 689 (1971). Getting ready to hit someone may, in many cases, be a reasonable characterization of actions taken by a person. If a person raises his or her fist to another person, it is reasonable to believe that the person was getting ready to hit the other person. And, importantly, other people who heard a witness describe someone as "getting ready to hit" another person likely would have a frame of reference from their own experiences that would provide them with an understanding of what the witness meant by the statement. Such conduct is completely different than the amorphous concept of being "very guilty-looking," because that concept lacks a commonly-understood meaning.

*Smoots,* 2013 COA 152, ¶ 20, —— P.3d —— (One division of the court of appeals is "not obligated to follow the precedent established by another division.").

---

5. While I believe the cited decisions of this court are distinguishable, to the extent that any of the cited decisions of a prior division of this court are inconsistent with my analysis, I would not follow those decisions. *See, e.g., People v.*

¶ 117 Similarly, in *People v. Farley,* a division of this court permitted a counselor who had assisted the police in investigating a crime to testify that the victim was "in a state of shock." 712 P.2d 1116, 1118–19 (Colo.App.1985). I submit that being in a state of shock is something that may have a common meaning or understanding to a lay person and thus a lay juror. In any event, it does not carry with it the tremendous potential of prejudice of the testimonial evidence admitted in this case. The determination of guilt is the fundamental purpose of a criminal trial. Although the fact that the victim was in a state of shock might have consequence in a particular criminal case, testimony that someone was in shock is not equivalent to testimony that someone looked guilty of the crime charged.

¶ 118 *People v. Rubanowitz,* also relied upon by the majority, merely supplies the noncontroversial proposition that "[t]he requirement of CRE 701(b) as to the testimony's helpfulness to the jury is satisfied when a witness'[s] expression of his opinion provides the jury with his [or her] overall impression and brings the particulars into focus." 673 P.2d 45, 47 (Colo.App.1983) (internal quotation marks omitted). Therefore, *Rubanowitz* does not offer any guidance regarding the specific issue raised ·here: whether the witness's testimony that defendant was "very guilty-looking" actually satisfies the requirement that it "provide[ ] the jury with [her] overall impression and bring[ ] the particulars into focus."

¶ 119 The out-of-state cases relied upon by the majority, none of which are binding upon this court, are also either distinguishable or were wrongly decided. In *State v. Braxton,* 352 N.C. 158, 531 S.E.2d 428, 444 (2000), a police officer testified that the defendant "looked guilty" "based upon his observation that, as [the] defendant saw [the officer] approaching, [the] defendant immediately raised his hands." While I would prophylactically prohibit all such "looks guilty" testimony, the factual predicate for the admission of the evidence in *Braxton* is far sounder than in this case. Holding one's hands in the air when a police officer approaches might, in some contexts, be reasonably characterized

as exhibiting evidence of guilt (although if a defendant holds his or her hands in the air to avoid a potentially fatal encounter with an armed officer, the probative value of such testimony would be, like in this case, minimal).

¶ 120 Moreover, in *Braxton,* the witness was a police officer. The jury will almost always know that police officers are part of the prosecution "team"; they are not generally perceived to be impartial witnesses. Conversely, in this case, the witness who testified that defendant was "very guilty-looking" was (presumably) a friend of defendant who did not previously know any of the other participants at the party. This presumed impartiality was repeatedly emphasized by the prosecutor during closing argument. In substance, if not words, the prosecutor told the jury that if this friend of defendant believed that defendant looked extremely guilty, how could the jury not similarly conclude that to be the case.

¶ 121 Neither *People v. Jackson* nor *People v. Meza,* two unpublished cases relied upon by the majority, ask or answer the critical, threshold question that the majority also does not address: what it means to say that a person is "very guilty-looking." In *Jackson,* the defendant claimed that his trial counsel provided ineffective assistance of counsel when he failed to object to testimony by a trial witness that the defendant appeared to be guilty of second degree murder because he avoided contact with his friends and failed to act upset by the victim's death. No. 304163, 2013 WL 276054, at *2 (Mich.Ct. App. Jan. 24, 2013) (unpublished opinion). The only analysis on this issue was that "[the witness's] testimony regarding [the defendant's behavior] was rationally based on his perceptions of [the defendant], thus it was proper" and "any error [by] defense counsel in failing to object to or for eliciting such testimony does not warrant relief." *Id.*

¶ 122 In *Meza,* a witness testified that when he looked into the eyes of the defendant he saw "guilt." No. C067992, 2012 WL 2924540, at *4 (Cal.Ct.App. July 19, 2012) (unpublished opinion). The appellate court refused to decide the admissibility of the "guilt" statement stating, "[t]his argument

was forfeited ... because [the] defendant failed to make it in the trial court." *Id.* Additionally, the court's statement in a footnote that the testimony would not have been objectionable as improper opinion testimony if the defendant had objected at trial because the witness "essentially described [the] defendant's behavior as being consistent with guilt," *id.* at *4 n. 2, does not provide any analysis regarding the testimony's helpfulness to the jury.

¶ 123 The majority states that three out-of-state cases that have excluded "looked guilty" evidence provide no analysis or reason for the exclusion, implying that the courts rendering those decisions did not have a principled basis to reach their conclusions. *See United States v. Fabel,* No. CR06–041L, 2007 WL 313934 (W.D.Wash. Jan. 30, 2007); *State v. Baldwin,* 36 Kan. 1, 12 P. 318, 326 (1886); *State v. Yarber,* 102 Ohio App.3d 185, 656 N.E.2d 1322, 1326–27 (1995). However, that is not a fair characterization of those cases.

¶ 124 *Yarber* was an ineffective assistance of counsel case in which defense counsel failed to object to improper leading questions, failed to establish a coherent strategy, failed to question the alleged victim concerning inconsistencies in his statements or even argue the inconsistencies during closing argument, and appeared "confused" throughout the trial. *Yarber,* 656 N.E.2d at 1324–25. One of the few coherent objections that defense counsel did make was to the testimony by a witness that the defendant "looked guilty." *Id.* at 1326. That objection was sustained by the trial court, but not addressed by the appellate court, presumably because the defendant did not argue on appeal that the testimony, despite the sustained objection, influenced the jury's verdict.

¶ 125 In *Baldwin,* an "expert ... skilled and experienced in detecting crime from the appearance of those charged with it," testified that, based upon his experience in dealing with criminals, it was his opinion that the defendant had the appearance of being a guilty man. 12 P. at 326. The trial court sustained an objection to this question, and the Kansas Supreme Court held the opinion "very properly excluded" by the court. *Id.*

¶ 126 Even though it is true that the courts did not provide any analysis of their holdings in this regard, I would look at these cases a little differently than the majority. To me, it is entirely possible that those courts thought it was so obvious that such testimony should not be admitted in a criminal trial that no further explication was necessary. While my analysis may be more nuanced, my conclusion is the same.

¶ 127 An unpublished case from the Kentucky Supreme Court, *Martinez v. Commonwealth,* also excluded "looked guilty" evidence. No. 2008–SC–000082–MR, 2009 WL 2706958 (Ky. Aug. 27, 2009). In *Martinez,* a police detective testified that the defendant reacted to a police interrogation "in a manner which indicated guilt." *Id.* at *5. The court held that the admission of this testimony was error under Kentucky's version of CRE 701 because the detective "had no personal knowledge that [the defendant] was guilty, only a belief, and his belief [the defendant] was guilty was not useful to helping the jury understand [the] ... statements" that the defendant made during the interrogation. *Id.* at *6. The same could be said here: The witness's belief that defendant was "very guilty-looking" was not useful to helping the jury understand defendant's conduct at the time of the incident, and the admission of her testimony therefore was error.

### E. Reversible Error

¶ 128 Because I believe that the trial court abused its discretion in admitting the witness's testimony that defendant was very "guilty-looking," it is necessary to determine whether its admission constituted reversible error. While there probably was sufficient evidence, under the applicable standard of review on a sufficiency challenge, to support defendant's conviction with or without this challenged testimony, this is not a case of overwhelming evidence of guilt.

¶ 129 Although the observations of the two adult witnesses demonstrate reprehensible conduct by defendant (and perhaps could have supported a conviction on other charges), those observations do not prove the elements of the crime of which defendant was

convicted: sexual assault on a child. As in many cases involving sexual assaults on young children, there was no physical evidence. Also, as noted by the majority, the victim did *not* testify at trial that defendant committed any offenses against her. To the contrary, at trial, the victim could not even identify defendant and could not remember whether any of the events she had previously related to investigators actually occurred.

¶ 130 Given this record, I cannot conclude that the error in the admission of the "very guilty-looking" testimony was harmless.[6] Therefore, a new trial is required.

## II. Victim Reaction Testimony

¶ 131 Whether the victim reaction testimony (the victim's father's testimony that the victim said thinking about "it" made her feel sick) was properly admitted is a closer question. While the majority's analysis regarding this issue is persuasive, ultimately I cannot agree. Even if this testimony were admissible under a hearsay exception, I conclude that the evidence should have been excluded under CRE 403.

¶ 132 Unlike the majority, I conclude that the record is unclear as to what precisely the victim was reacting to when she "felt sick to her stomach." Like the jury, we do not know the content of the counseling sessions. It is entirely possible, indeed likely, that matters discussed at the counseling session were very disturbing. Thus, it is entirely possible that the victim's sickness could have had everything to do with the content of the counselling sessions and nothing to do with defendant's actions. As a result, this evidence does not survive a proper CRE 403 analysis; its probative value is far outweighed by its likelihood to confuse the jury. I therefore believe the trial court abused its discretion in admitting this evidence, and for the reasons discussed above regarding the

quantity and quality of the evidence presented in this case, this error was not harmless.

¶ 133 But even if the erroneous admission of the victim reaction evidence does not in itself require reversal of the conviction, when combined with the erroneous admission of the "very guilty-looking" testimony, these errors together require reversal under the cumulative error doctrine. *See Oaks v. People*, 150 Colo. 64, 66–67, 371 P.2d 443, 446 (1962) (explaining the cumulative error doctrine).

## III. Judicial Bias

¶ 134 Lastly, I address the claim of judicial bias. I agree with the majority that there is nothing in the record that supports a finding or conclusion that the trial court was prejudiced against defendant. The transcripts of all of the proceedings before the trial court demonstrate the opposite: The trial court was fair and impartial and, in the instances challenged by defendant, was simply trying to be helpful.

¶ 135 That said, however, a judge must not only be impartial in fact, but also must not engage in any actions that would cause a reasonable person to conclude that there was any favoritism for or animosity against any party. *See* C.J.C. 1.2 ("A judge … shall avoid impropriety and the appearance of impropriety."); C.J.C. 1.2 cmt. 5 ("The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's … impartiality.").

¶ 136 A trial court risks crossing that very important line when it suggests to one side or another how that party may resolve difficult evidentiary issues. It is the responsibility of the parties, both of whom in this case were represented by counsel, to make appropriate objections and to determine how to properly offer the evidence they wish to present. It is the job of the trial court to

---

**6.** The fact that the witness testified that defendant remained silent and did not defend himself when the victim's friend's father made accusations against him and ordered him to leave does not change my harmlessness analysis. In my opinion, remaining silent in the face of accusations is significantly different from confessing, and defendant may not have defended himself for

reasons other than because he was guilty. *Cf. People v. Quintana*, 665 P.2d 605, 611 (Colo. 1983) ("Due to the many possible explanations for the defendant's post[-]arrest silence, … evidence of his failure to make a statement to the arresting officers was so ambiguous and lacking in probative value as to be inadmissible as substantive evidence" of guilt.).

rule on evidentiary objections; it is not the job of the trial court to instruct or suggest to represented parties how evidence may be admitted and how evidentiary barriers may be surmounted. *Cf.* C.J.C. 2.2 cmt. 4 ("It is not a violation of [the Code of Judicial Conduct] for a judge to make reasonable accommodations to ensure pro se litigants the opportunity to have their matters fairly heard.").

## IV.  Conclusion

¶ 137 The jury found defendant guilty. For many good reasons, in our system of justice, that determination is committed to a jury, not judges.  But it is the responsibility of judges to apply the rules of evidence to ensure that the information upon which jurors make these determinations is reliable. If the information made available to the jurors does not meet the requirements of the rules of evidence, the resulting decision by the jurors is not sufficiently reliable to deprive a person of his or her life or liberty.

¶ 138 Accordingly, I respectfully dissent. Defendant's conviction should be reversed and the case remanded for a new trial.